YAZOO & M. V. R. Co. *v.* WILLIAMS.

[74 South. 835, Division A.]

1. NEGLIGENCE. *Accident at crossing. Crossing. Contributory negligence.*
   Under Acts 1910, chapter 135, providing that contributory negligence shall not bar a recovery, although plaintiff was guilty of gross negligence contributing to his injury in attempting to cross a railroad track at a private crossing without looking or listening, still he is entitled to recover where the defendant railroad company was also guilty of negligence in causing the injury.

2. RAILROADS. *Accident at crossing. Contributory negligence. Gross negligence.*
   A party who undertakes to cross a railroad track, at a private crossing without first looking or listening or taking any other precautions, whatsoever is, as a matter of fact and law, guilty of gross negligence.

3. RAILROADS. *Accidents at crossing. Negligence. Evidence. Sufficiency.*
   In an action to recover for personal injuries and damages to an automobile sustained in a collision at a private railroad crossing the court held that under the evidence it was a question for the jury as to whether or not the failure of the engineer to sound the whistle or ring the bell constituted negligence on the part of the railroad company.

4. NEGLIGENCE. *Excessive damages. Contributory negligence. Statute.*
   Under the concurrent negligence statute (Act 1910, chapter 135) providing that damages shall be diminished in proportion to the amount of negligence attributable to the person injured, a verdict for ten thousand dollars for permanent personal injuries and damages to an automobile was excessive when the plaintiff was guilty of gross negligence contributing to his injury.

5. DAMAGES. *Remote damages.  Speculative damages.*
  In an action for personal injuries sustained in a collision at a rail-
    road crossing damages suffered by plaintiff on account of en-
    forced absence from his plantation, resulting in the loss of thirty
    bales of cotton and several tenants leaving his place, cannot be
    recovered, being too remote and speculative.

APPEAL from the circuit court of Tunica county.
·HON. W. A. ALCORN, Judge.
Suit by Burch Williams against the Yazoo & Mis-
sissippi Valley Railroad Company. From a judgment
for plaintiff, defendant appeals.
The facts are fully stated in the opinion of the court.

*Montgomery & Montgomery, Charles N. Burch* and
*H. D. Minor,* for appellant.

*Wilson & Armstrong,* for appellee.

HOLDEN, J., delivered the opinion of the court.

The appellee, Burch Williams, sued the Yazoo &
Mississippi Valley Railroad Company in the circuit
court of Tunica county for fifteen thousand dollars as
damages for personal injuries to himself, and the de-
struction of his automobile, on account of being struck
by one of the appellant's trains while crossing the rail-
road track at Clayton in November, 1914. There was a
jury verdict and judgment for ten thousand dollars in
the lower court from which this appeal is prosecuted.
The facts in the case are stated fully as follows:
At Clayton station, an unincorporated village, there is
a long passing track, a house track, a depot, and the
main line of the appellant railroad company running
north and south. A public road runs north and south,
parallel with the railroad, on the east side of the depot,
main line, and passing tracks, and crosses the railway
tracks, from east to west, a short distance north of the
depot, and runs thence north along the railroad right

of way, and parallel therewith, on the west side for several miles. On the east side of the railway at the point where this public road crosses the railway tracks, another road, commonly known as a plantation or private road, runs north on the east side of the railway track close by and parallel therewith,· about two thousand, four hundred feet to a point where it turns west and crosses the railway tracks at what is generally understood to be a plantation crossing, which we will designate as the ''north crossing,'' and after crossing the track this road leads into the aforesaid main public road lying on the west side of the railroad. There is also a field road turning out east into the adjoining plantation at the point immediately east of the said north crossing. It also appears that there is a private road running still further north of this private crossing on the east side of the railroad track. The testimony shows that· this plantation road on the east side running from the public crossing, near the depot, which crossing we will designate as the ''south crossing,'' to the north crossing, two thousand, four hundred feet north, was frequently and generally used by the public, and that the north crossing was likewise in common use by the public in crossing the railroad track ·from the east to the west at that point in order to reach the said public road on the west side of the railroad.

The injury occurred to Mr. Williams at· what we term this ''north crossing.'' This crossing was not considered a public crossing in the statutory sense that the railroad was required by law to give certain warnings, such as sounding the whistle or ringing the bell, upon approaching it; but it was a private or plantation crossing, which was frequently and habitually used by the public for several reasons, among which was the fact that the south public crossing over the railroad track just north of the depot was frequently and habitually blocked by trains standing on the tracks at that point, which made it necessary for persons desiring to cross the track

to travel east side plantation road north to the north crossing and there cross over to the west in order to get into the public road again on the, west side. It is shown that the public crossing just north of the depot, which we have termed the "south crossing," was habitually blocked by standing trains for as long as twenty or thirty minutes at a time, and that this fact was commonly known to persons using the roads and crossings in the Clayton community. These conditions and the frequent and common use of the east side plantation road, and the north crossing, by persons traveling in vehicles, was known to the appellant railroad company.

On the day of the injury, Mr. Williams had come from the south, traveling up the public road on the east side of the railroad in his automobile to the south crossing for the purpose of crosing the track at this public crossing, going from east to west on this public road. When he reached this south public crossing, he found it blocked by appellant's cars, and after waiting about two minutes he decided that he would follow the plantation road north on the east side of the track and cross over the track at the north crossing. He said he knew that it was a common every day occurrence for this south crossing to be blocked from fifteen to thirty minutes at a time, and he decided to not wait longer for the crossing to be opened, but pursued the usual and customary way of crossing the track by going up the plantation road on the east side and crossing over at the north crossing into the public road on the west side. So, he started north on this plantation road on the east side of the track, and, when he reached the north crossing and turned west on the crossing to cross the track, he and his automobile were struck and injured by the passenger train of appellant which was proceeding north on the main line at a rate of speed of about thirty-seven miles per hour. At the time there were two freight trains on the passing track, one of which was headed south and the other was headed north, and the engine of the north-bound freight

train was standing still on the passing track a distance of five hundred and thirty-three feet south of this north crossing. It was a clear day, and the track was straight and unobstructed for at least the distance of five hundred and thirty-three feet south of the north crossing. The appellee testifies that he was travelling alone in his automobile on this road, and that he turned west at the north crossing to cross over and was on the track when he was truck and injured by the train. He says there was no warning given by the engineer of the approach of the train either by bell or whistle, and that the first that he knew of the train was when the engine struck his car in which he was riding. Other witnesses for appellee Williams˙ testified that no warning by bell or whistle was given by the engineer before the injury occurred.

It appears from the record including pictures, diagrams, maps, etc., filed here, that the two private or field roads leading north and east respectively immediately east of the north crossing were comparatively dim, unusual roads, and that the plantation road leading from the south crossing to the north crossing east of the track appeared to be a plain and much traveled road leading to and over the north crossing. It further appears conclusively from the testimony in this record that the engineer of the passenger train which struck appellee Williams could have seen, and did see, Williams and his automobile traveling north in the road on the east side of the track for a distance of at east five hundred and thirty-three feet before the passenger train reached the north crossing. The engineer testified that he saw the automobile and Williams while he was traveling the distance of five hundred and thirty-three feet, and that he was watching the automobile closely, and that he observed that Mr. Williams did not look back toward the train.

The engineer testified:

"I was watching the automobile very closely and just as soon as I seen the left forward wheel make just a turn, why, I thought he was going to try to cross. Why, by his motion of the head that he had never looked around, I could just see the side of his cheek, and it looked to me he did not look to see where I was, or anything else. Q. And you noticed he didn't look back? A. I am positive about it. Q. You are sure of it? A. Yes, sir."

Which testimony shows conclusively that the attention of the engineer was attracted to the traveling automobile and its occupant, and that he had them under observation for a distance of over five hundred feet before the crossing was reached by the train.

The engineer also testified for the railroad company that he had stopped at the Clayton station and then proceeded north on the main line, increasing his speed until he was traveling at the rate of about thirty-seven miles per hour when he passed the north clear end of the passing track at which point the engine of the north-bound freight train was standing. He testified that he sounded the road crossing warning at some point south of the south public crossing, and again about six hundred feet south of the north crossing, and that he started his bell to ringing which was worked automatically, and that it continued to ring until reaching the north crossing; that he saw appellee, Williams, in his automobile traveling north of the plantation road east of the track and observed him cosely, but that he did not think Williams was going to cross the railroad track at the north crossing, but he thought Williams would turn out eastward into the field road leading east from the north crossing; that, as soon as he saw Williams turn west toward the north crossing, he immediately applied the brakes and did everything within his power to stop his train and avert the injury; and that at the time he struck the automobile the speed of the train had been reduced to about eight miles per hour.

114 Miss.—16

The undisputed evidence in this case shows that the appellee, Williams, undertook to cross the railroad track without first looking or listening for the approach of trains, nor did he stop or make any effort whatever to discover the approach of any train, but went upon the track without taking any precaution whatsoever' for his own safety. By the mere turning of his head to the left he could have seen, or should have seen, the approaching train and avoided the injury; the day was bright, the track clear and unobstructed to his view for several hundred feet south of the crossing, and the least bit of care and energy on his part in looking would have brought to his full view the fast approaching train before he reached the crossing; and he could have stopped his automobile within a short distance and no injury would have occurred.

The proof in the record shows that the appellee, Williams, was seriously injured, which may be permanent, and from which he suffered for a considerable length of time; and that, in addition to the damages for the personal injury, he claimed that he was damaged by being incapacitated and prevented from carrying on the business of his plantation, and that he had to hire another man, for one hundred and ninety-five dollars in his place to look after his business, and that on account of his not being able to give his personal attention to his business he lost thirty bales of cotton which were not picked out of the field, and that several of his tenants left his premises. He also claims damages for the injury to his Ford automobile, and hospital expenses and doctors' bills, etc.

We deemed it necessary to state the facts of this case at length because the case depends upon the whole facts in evidence.

The appellant railroad company assigns several errors of the lower court and urges a reversal of the judgment obtained below; but, after a careful examination of all of these contentions, we think that only two of the grounds

presented for reversal are due serious consideration and discussion by us. They are: First, whether the lower court erred in refusing to exclude all of the evidence and grant a peremptory instruction for the railroad company; second, whether the circuit court erred in permitting the testimony to go to the jury with reference to the damages claimed by appellee Williams in the loss of thirty bales of cotton, and the loss of tenants from his plantation; and, also, whether the judgment of ten thousand dollars is grossly excessive in view of our ''concurrent negligence'' statute, which provides that damages shall be diminshed in proportion to the amount of negligence attributable to the person injured. In other words, whether or not the judgment is excessive.

The main question in the case, which has given us considerable trouble, is whether or not the evidence is sufficient to raise a question of fact for a jury to determine, as to whether the railroad company was guilty of negligence in causing the injury to the appellee. If the act of the railroad company causing the injury constituted mere negligence, then the appellee will be entitled to recover damages, rgardless of whether he was guilty of gross negligence which contributed to the injury. We do not hesitate to hold that the conclusive proof in this record shows, as a matter of fact and law, that the appellee, Williams, was guilty of gross negligence in going upon the railroad crossing without using any care or caution whatever for his own safety. But this fact cannot defeat his recovery for some amount of damages, if the railroad company was guilty of negligence. Chapter 135, Acts of 1910.

The condensed facts present this kind of a case: When Williams reached the south public crossing, going west, he found it blocked, as was usual and as was commonly known, at that point. He then proceeded north on the plantation road immediately east of the railroad to the north crossing, where he intended to cross over west into the public road. This plantation road on the east side

was used generally and frequently by the public. It
was necessarily used a great deal by the public on ac-
count of the customary and usual blocking of the south
crossing, and also it was commonly used by the public
who desired for other reasons to cross over the track
at the north crossing. This north crossing, the crossing
upon which appellee, Williams, was injured, was used by
the public generally and as frequently as the plantation
road on the east side of the track. The railroad com-
pany had full knowledge of the fact that the south
crossing was usually and habitually blocked with trains,
and that it was blocked on this occasion, and that par-
ties desiring to cross were compelled to use the north
private crossing and the plantation road leading to the
north crossing; and the railroad company also knew that
the road on the east side was frequently and habitually
used by the public. In fact, the railroad company had
knowledge of all of these conditions and circumstances
connected with the situation at this station of Clayton
and the crossings north of it.

Now, let's see, Williams was driving along north in his
automobile in the plantation road east of and close by the
track, and had not looked back nor toward the track west
and south of him. As Williams was traveling along in
the road, the engineer on the passenger train started
from the depot, coming north, and had increased his
speed to about thirty-seven miles per hour at the point
where he came in sight of the automobile, which was
a distance of over five hundred feet before he and the
automobile reached the north crossing. The engineer said
that he could clearly see the automobile and Williams
in it; that he was watching the automobile closely and
paying attention to the occupant of it; and that he
was observing it so closely that he could state positively
that the occupant, Williams, did not turn his head around
and look back toward the approaching train at any time.
The engineer could plainly see, and he says that he did
see, the automobile moving north on the road toward the

north railroad crossing; that he watched it while he traveled a distance of more than five hundred feet; and that the driver, Williams, did not look back for the train. William was therefore evidently unaware of the fact that the train was approaching. But the engineer says that he did not think that the driver of the machine intended to cross the railroad track at the north crossing, but that he thought he would turn out east into the field road, which was a dim, unused road turning to the east at a point opposite the north crossing. Of course, what the engineer thought cannot govern solely in a question of negligence; but the test is, not what he thought, but what a prudent man ought to have thought and done under the circumstances, and whether or not he exercised ordinary care and caution in failing to give some warning, either by bell or whistle, of his approach to the crossing after he saw that appellee, Williams, was paying no attention to him, and was not aware of his impending danger, seeing that he was going toward and approaching the crossing, a place of peril, and would probably attempt to cross the track when he reached it.

The engineer was observing the car; he could see that it would very likely cross the railroad track at the crossing; he knew the driver did not know of his approach, or the danger and perilous position he was fast placing himself in—the engineer knew all of this and could see and appreciate the whole situation at a point more than five hundred feet before he reached the crossing. He knew this road so frequently traveled would lead the traveler across the track at the north crossing. He knew that the south public crossing was blocked as usual and that persons desiring to cross would, as usual, use the north crossing to cross over to the road on the west side. With this situation within his knowledge and plain view, and with plenty of time in which to act, he increased the speed of his train as rapidly as possible, and proceeded ahead toward this crossing without ringing the bell or sounding the whistle, one blast of which

would probably have prevented the injury, and made no effort to protect the automobile from collision when he knew the driver of it was unaware of his danger, and would very probably attempt to cross over the track —and struck the appellee, causing the injury and damage sued for in this case.

We think that the acts and conduct of the engineer, according to his own testimony, were sufficient to raise a question of fact, to be determined by the jury, as to whether or not the railroad company was guilty of negligence.

We do not overlook the numerous authorities cited by counsel on both sides of this controversy, and have endeavored to familiarize ourselves with the well-established rules of law announced in the decisions cited by counsel. We know that, as a general rule, the engineer, in the character of the case before us, would have a right to assume that a party before crossing the track would exercise due care and caution for his own safety; that the engineer, ordinarily, could rely upon this presumption the same as he could rightfully assume that a party walking upon the track, not in peril known to the engineer, would get off before reached by the approaching train. These rules announce good law and should be followed in proper cases. The case at bar presents the question of fact, to be determined by a jury, as to whether or not, under all the facts and circumstances here, the engineer knew the impending peril of Williams, and that Williams was not aware of it, and should have given some warning, either by bell or whistle, when he saw that the appellee would very probably reach a dangerous position on this· crossing which he was unaware of, and which would result in his injury. The jury could well decide, under the facts and circumstances here, that the engineer did not exercise the care and caution required of a reasonably prudent person, and that he was negligent in the performance of his duty. The jury would have been equally

justified, if it had seen proper in its judgment, in find-
ing that the engineer was not guilty of negligence, but
that he acted with reasonable care, and caution under
the circumstances, as any reasonably prudent person
should have done under the same conditions as there
presented.

These close questions of negligence vel non can only
be determined safely and righteously by the juries of the
country. A standard of conduct constituting negligence,
or due care, in the numerous affairs of life, cannot be
safely established from the Bench; but such questions
must be left to the logic and reasoning of the laymen
who compose the juries, taken from all the walks of life,
and who are familiar with ordinary human affairs and
general conditions of everyday life. In view of these
conclusions, we do not think the lower court erred in
submitting the question of negligence to the jury; and,
so far as the finding by the jury of the liability of the
railroad company for the injuries is concerned, we hold
that the judgment of the lower court should be affirmed.
*Russell* v. *Atchison Ry. Co.*, 70 Mo. App. 88; *Hodges* v.
*St. L., K. C. & N. Ry. Co.*, 71 Mo. 50; *Davis* v. *Louisville
Ry. Co.* (Ky.), 97 S. W. 1122; *Cleveland R. Co.* v. *Baker,*
106 Ill. App. 500; *Jarrel* v. *N. O. & N. E. R. Co.*, 109
Miss. 50, 67 So. 659; *Hartman* v. *Chicago, G. W. R. Co.,*
132 Iowa, 582, 110 N. W. 10; *Corder's Adm'r* v. *C., N.
O. & T. P. R. R. Co.,* 155 Ky. 536, 159 S. W. 1144; *Nichols*
v. *Chicago R. Co.*, 125 Iowa, 236, 100 N. W. 1115; *I. C.
Ry. Co.* v. *Dillon*, 111 Miss. 523, 71 So. 809; *Weiss* v.
*Great Northern R. Co.*, 119 Minn. 355, 138 N. W. 433;
*Southern Ry. Co.* v. *Lawler*, 11 Ala. App. 241, 65 So.
859; *Valin* v. *Milwaukee & N. R. Co.*, 82 Wis. 1, 51 N.
W. 1084, 33 Am. St. Rep. 17.

As to the second contention of appellant, that the
judgment is excessive, under chapter 135, Acts of 1910,
and that no recovery can be had with reference to the
cotton left in the fields, we have given these questions
very careful consideration, and we cannot escape the

conclusion that the verdict and judgment for ten thousand dollars in this case is grossly excessive.

In the first place, we think that the one thousand, three hundred and fifty dollars claimed by appellee as damages as suffered by him on account of his forced absence from his plantation which resulted in the loss of thirty bales of cotton and several tenants leaving the place is speculative and too remote for recovery in this case. The amount of money, one hundred and ninety-five dollars which was necessary to pay to the manager who took the place of appellee while he was disabled and incapacitated, is recoverable here; but to say that the railroad must pay for the negligence or incompetency of this hired manager, or for the families leaving the place, which might have happened anyway, or to say that appellant must pay for the cotton left in the fields because no one was hired to pick it, would be to charge the appellant with damages which could not be said to have been proximately caused by its act of negligence, and damages that did not reasonably and naturally result from the injury caused by the negligence of the railroad company. *Blackman* v. *Proprietors,* 75 Me. 214; 13 Cyc. 141, note 17.

We are also clearly convinced that the judgment for ten thousand dollars in this case is excessive, for the reason that the appellee, Williams, contributed to his injury by his own gross negligence, which would bar recovery here if it were not for our concurrent negligence statute (chapter 135, Acts of 1910), which comes to his rescue and saves him from defeat. But we feel certain that the verdict of the jury is contrary to the evidence and the law, and is manifestly wrong, in this, that the jury failed to diminish the damages in proportion to the amount of negligence attributable to the appellee Williams. We do not say that the verdict of ten thousand dollars is not supported by the testimony as to the damages and personal injuries of appellee, Williams, and we

would not disturb this verdict of ten thousand dollars, if
the appellee, Williams, had not himself been guilty of
negligence. We do not think that Williams was entitled
to more than ten thousand dollars or twelve thousand dol-
lars for his injuries and damages if he had been free of
negligence; and we hold that the evidence would not
justify a larger verdict than ten thousand dollars or
twelve thousand dollars, even if the appellee had been
guity of no negligence at all; but what is very evident
and plain to us is that the jury failed to diminish the
amount of damages in proportion to the gross negligence
of the appellee Williams, and we think this court could
take notice of this concurrent negligence statute in its
entirety, and see that the juries observe the provisions
therein, and diminish the damages in proper cases where
the evidence manifestly justifies it.

The appellant railroad company here was guilty of
mere negligence, and appellee, Williams, was guilty of
gross negligence; and this court is justified in holding as
a matter of law that appellee, Williams, was guilty of
gross negligence under the facts in this case, and that the
jury failed to diminish the damages on this account, and
failed to charge the appellee with his negligence and
proportionately decrease the amount of recovery. There-
fore the verdict is contrary to the law and the evidence
as to the amount of damages assessed. It is rather diffi-
cult for us to apportion, and we would not undertake or
attempt to apportion the negligence of the parties in any
case, unless the case is so plain and the injustice so
palpable that we feel safe in acting, as in this case, in
which event we shall not hesitate to do so. Therefore we
hold that the proof in this case shows that, as a matter
of fact and law, the appellee, Williams, was guilty of
greater negligence than the appellant railroad company,
and as ten thousand dollars or twelve thousand dollars
would have been the maximum amount of recovery al-
lowed to stand in this case, with the claim for the

loss of the cotton excluded, we can safely say it is right and just in this case that the judgment should be reduced to five thousand dollars. The appellee here would be barred from recovery without the aid of chapter 135, Acts of 1910, and in accepting the benefits of this act he cannot ignore the latter provision contained therein, viz.:

"But damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured."

If the appellee will enter a remittitur here for five thousand dollars, the judgment of the lower court will be affirmed; otherwise it will be reversed, and the case remanded.

*Reversed and remanded.*