TALLAHALA LUMBER CO. *v.* HOLLIMAN.

[87 South. 661.   No. 21614.]

1. MASTER AND SERVANT.   *Relation not served by employee's act in attempting to board moving train.*

Where a lumber company was transporting its employees on its train from their work in the woods to the camp, and an employee who was a member of the track crew was called from the train by a signal given by his foreman after the train had stopped on account- of some defect in the locomotive, and the employee interpreted this signal to mean that track work was necessary to be done ahead, and then left the train and followed his foreman down the track to a point at or near the front of the locomotive, and the train then started forward toward the camp, and the employee attempted to board the train as it passed him and was injured, *held*, that the act of the employee in endeavoring to board the moving train, where he had a right to ride, was not an abandonment of the master's business and did not sever the relation of master and servant.

2. MASTER AND SERVANT.   *Master's knowledge of defective car step held for jury.*

Where a lumber company undertook to transport its employees on its trains to and from their work in the woods, and one of the steps of a car which was furnished for that purpose was twisted or bent, and there was evidence that the company did not maintain any system of inspection of such cars while in use in the woods, under the facts in evidence, it was a question for the jury as to whether the defendant knew, or by the exercise of reasonable care and diligence could have known, of the defect in the step.

3. MASTER AND SERVANT.   *Negligence as to employee boarding car with defective step and his contributory negligence held for jury.*

Under Acts 1910, chapter 135 (Hemingway's Code, Section 502 and 503,) providing that contributory negligence shall not bar a recovery, when the step of a flat car, which has been furnished by the defendant company for the purpose of transporting its employees to and from their work, was twisted or bent, and an employee was injured in attempting to use this bent step in

boarding the train while moving, *held*, that, under the facts in evidence, it was a question for the jury as to whether, in furnishing a car with a defective step, the defendant was guilty of negligence which contributed to the injury, and that all questions of negligence and contributory negligence were properly submitted to the jury.

4   NEGLIGENCE. *Employee boarding moving train held guilty of contributory negligence requiring diminution of damages.*
   Under the concurrent negligence statute (Laws 1910, chapter 135), providing that damages shall be diminished in proportion to the amount of negligence attributable to the person injured, where on employee suffered the loss of a leg by reason of an attempt to board a moving train, *held*, that, under the facts in evidence, the plaintiff was guilty of contributory negligence, and that a verdict for eighteen thousand dollars was excessive.

APPEAL from circuit court of Forrest county.
HON. R. S. HALL, Judge.

Action by Andrew Holliman against the Tallahala Lumber Company.  Judgment for plaintiff, and defendant appeals.  Affirmed conditionally.

*T. Brady,* for appellant.

The instruction which the appellant asked the court to give; namely, that it was under no duty to furnish a safe step to appellee to assist him in jumping on appellant's moving train, but was under the duty only to furnish him with a safe step to get on appellant's train when it was not in motion, should have been given under the contention of appellee that he was a passenger.  In answer to this contention, which is about as strong as that of any other mentioned in appellee's brief, appellant directs the attention of the court to the fact that appellee left appellant's train in obedience to an order of his superior. He could not, therefore, have been a passenger in the sense of the word or term contended by appellee. He was nothing more than an employe and he was behaving as an employe when he left appellant's train in obedience to the orders of his superior.  He was also disobeying the orders of his

superior when he jumped on appellant's train when it was moving, because the testimony shows, and appellant here challenges the record on the point, that the signal for the train's starting to the camp was the ringing of the bell and two blasts of the whistle. Appellee earnestly contends that because he was a passenger he is entitled to recover, but for fear that this contntion will not be sustained by the court, he also contends that if he were not a passenger, then he was not acting beyond the scope of his duties because other persons jumped on appellant's train while it was moving. In other words, appellee admits that he jumped on the train after he was directed to leave the train and follow his superior officer, but he says because other employees did likewise, that, therefore, he was justified in so doing and is accordingly entitled to recover. He admits practically that he was acting beyond the scope of his duties and contends that because others were negligent, that he, likewise, had a right to be negligent and that his negligence does not bar his right to recovery because the step of appellant's car was twisted. Ordinarily this would be true, if he were acting within the scope of his duties, but it is not true that appellee is entitled to recover, when he was not so acting because, before the negligence of the appellant can be applied so as to entitle him to recover, he must have been acting within the scope of his duties and about his master's business. This he was not doing. He expressly states that he was directed to leave the train by his superior. and that he was not directed by anyone to get aboard the train and that nothing was done indicating to him that he should attempt to get aboard to continue his journey to his destination.

Second. Appellee takes issue on the fact as disclosed by the record with the contention made by appellant that it was not shown that it knew, or by the exercise of reasonable care and diligence could have known of the alleged defect in the stirrup or step.

Appellant directs the attention of the court to the fact that the appellee was an employee of the appellant and that under the Hope case and all other cases touching the question decided by the supreme court of this state, it is necessary for appellee to show either that the defect in the step existed at the time it was furnished by the master or,- in the event it became defective after it was so furnished, that the defect had been in existence for a length of time sufficient to have afforded the master, in the exercise of reasonable diligence, an opportunity to inspect it. The record in this case discloses that the cars used by appellant were inspected by an inspector of the Gulf & Ship Island Railroad Company before they were delivered by that company to it at Hattiesburg, Mississippi. The Gulf & Ship Island Railroad Company furnished an Inspector who lived at Hattiesburg, who did inspect cars.

Appellant was not under obligation to its employees to inspect its car steps every hour of the day. Its method of inspection, as disclosed by the record, was a reasonable one and the duty, therefore, devolved upon the appellant to show that the appellant knew or by the exercise of reasonable care and diligence could have known of the alleged defect in the step or stirrup. This it wholly failed to do and, therefore, under the decisions of the supreme court of this state, this case should be reversed. See *Hope* v. *N. C. & M. R. R. Co.*, 98 Miss. 882; *M. C. R. R. Company* v. *Bennett*, 71 So. 310; *Ten Mile Lbr. Co.* v. *Garner*, 78 So. 776.

Third. Appellant admits that he jumped on appellant's train while it was in motion and therefore made an improper use of the step but he contends that such a use of the step does not deprive him of the right of recovery because the train was not moving rapidly and that it was a custom for the appellant to slow its train down to let its employees get on board its train. Appellant takes square issue with the appellee in this contention.

Appellant especially directs the attention of the court to the fact that the custom of the appellant was not to

slow its trains down to enable its employees to jump on board moving trains. It is abundantly shown by the record that this is not the case, for it had a signal before it started which indicated to its employees that this train was going to the camps and that signal was the ringing of the bell and two blasts of the whistle. The record also discloses the fact fully and completely that appellant's train stopped for the purpose of allowing its employees to get on its cars.

Appellant contends, in spite of the statute requiring all questions of negligence to go to the jury, that this case should have gone to the jury because the bent or twisted step was not the proximate cause of appellee's injury; his injury was caused by the improper use of the step, which might have been used safely had it been properly used. Appellee was not a train employee, his duties did not require him to jump on a moving train and his act in doing so was an improper use of the step. Appellant does not contend, as appellee seems to think, that all questions of negligence in instances where both plaintiff and defendant are guilty of negligence proximately causing the injury must not go to the jury, but appellant does seriously and earnestly contend that negligence may exist on the part of the defendant, upon which the jury is not entitled to pass. The negligence which must go to the jury in all instances is a proximate negligence and one having some relation to the injury.

In conclusion, appellant reiterates that this case should be reversed for the four reasons hereinabove alleged and particularly on account of the argument made by appellee's attorney and on account of the fact that appellee was acting beyond the scope of his duties when he sustained the injury, on account of which he sues. See 4 Labatt on Master and Servant, sec. 1565; 4 Labatt on Master and Servant, sec. 1554, 4667. Also the following cases: *Kentucky Lbr. Co.* v. *I. B. Nichols,* 51 L. R. A. (N. S.) 1213; also 10 L. R. A. (N. S.), page 367; 27 L. R. A. (Note), page 161; *Chicago, B. & V. Q. R. R. Co.*

v. *Epperson,* 27 Ill. App. 79; *N. Y. T. & M. R. R. Co. Sutherland,* 3 Wilson Civ. Cas. (Tex.) 177; *Raynor* v. *Mitchell,* 2 C. P. Div. 357, 25 Week. Rep. 633; *N. O., etc., R. R. Co.* v. *Harrison,* 48 Miss. 112; *Burke* v. *Shaw,* 48 Miss. 445; *Fairchild* v. *N. O., etc., R. R. Co.,* 60 Miss. 631; *Louisville, etc., R. R. Co.* v. *Douglass,* 69 Miss. 723; *Illinois, etc., R. R. Co.* v. *Latham,* 72 Miss. 32; *Garner* v. *Viosca,* 8 Rob. 150; *Ryer* v. *Railey,* 28 La. Ann. 64; *Conniff* v. *Railway Co.,* 42 La. Ann. 477; *Odom* v. *Schmidt,* 52 La. Ann. 2120; S. C. 28 So. 350; *Weber* v. *Lockman* (Nebr.), 60 L. R. A. 313; *Dorsey* v. *Pittsburg, etc., R. R. Co.,* 104 La. Ann. 478; S. C. 52 L. R. A. 92; *Williams* v. *Pullman Palace Car Co.,* 40 La. Ann. 87; S. C. 3 So. 631.

In spite of all the contentions of appellee, it is hardly thinkable that the time has come when a small corporation like that of the appellant forced to rent rather than own cars will be required to pay the sum of eighteen thousand dollars, to the appellee, on account of the loss of his leg caused by jumping on its rapidly moving train, under a judgment rendered by a jury misled both by arguments of counsel and the erroneous announcement of the law as contained in the instruction of the court in this case. Appellant earnestly insists that this case should be reversed.

*N. T. Currie,* for appellee.

The first contention for reversal made by the appellant is that the appellee was not engaged in and about the master's business but was acting beyond the scope of his duties when he sustained the injury on account of which he sued and the judgment was rendered. In reply to this contention we assert that, as is shown by the record, the appellant admits its well established custom and system of work and operation to furnish special trains on which to transport and on which it did transport its employees to and from their work and the proof shows that these trains carried no logs or other loads, but employees only.

The appellant admits and the testimony shows that the train and car on which the appellee was injured was the train and car furnished by the appellant that evening on which to transport the appellee and other employees from their places of work to the camp. It admits that the appellee rightfully got on this train according to appellant's custom and at its invitation and request and started from his place of work to the camp. The proof shows that the appellee got on the train then and there furnished by the appellant to ride thereon from said place to the camp. The proof shows that the train was defective in two particulars.

(A) The injector on the boiler would not work, and,

(B) The step or stirrup on one of the cars was bent and twisted.

The proof shows that the train was stopped on the route to the camp not because of any sort of fault, default, negligence, or wrong of the appellee but because of the defective injector. The proof shows that when the train stopped, Nix, the appellee's foreman, who was riding up toward the front of the train, got off and signaled and that the appellee got off of the train in response to this signal which he interpreted to mean to get off of the train and go to some work on the track just ahead of the engine, track work being the kind of work he was hired to do, and immediately after he got off in response to this signal, the train started to moving slowly on toward the camp. When it passed the place on the track where the appellee thought the work was to be done he saw there was nothing wrong with the track and the train kept moving and the appellee, seeing the other men who had gotten off of the train getting back on it as fast as they could and believing that the train was pulling out for the camp, he undertook to get back upon the train and while so doing was injured. The train at that time was moving very slowly, at the rate of only four or five miles per hour.

Now, the appellant seeks to have this court hold under the facts and circumstances that the relation of master

and servant did not exist between the appellant and the appellee at the time the appellee undertook to get back upon the train. The appellant contends that the act of the appellee in getting off of the train and undertaking to get back upon it under the facts and circumstances. disclosed by the record for the purpose of continuing his journey thereon to the camp, the place of his destination, without orders so to do, severed the relation of master and servant between him and the appellant.

Not only have the courts held that the relation of master and servant, or employer and employee exists under such facts and circumstances, but many of them have held, and we think with great reason, that the relation of carrier and passenger exists, and we cite the following authorities: *Tanner* v. *Hitch et al.,* 53 S. E. 287; *Southern Railroad Co.* v. *West,* 62 So. 141; *Simmons* v. *Oregor Railroad Company,* 69 Pac. 440.

This court has never held so far as we are advised that the relation of carrier and passenger exists under the facts and circumstances of this case, but it has recognized the relation of master and servant in such cases. Reply to 2nd Assignment of Error.

The second ground for reversal urged by the appellant is that it was not shown that the appellant knew or by the exercise of reasonable care and diligence could have known of the alleged defect in the step or stirrup. The answer to this contention is that the car was furnished to the appellee on which to ride, or putting it another way, with or on which to work, in a defective condition. The testimony in the case, particularly that of J. P. Runnels, from which we have quoted herein, shows without dispute and conclusively that the step or stirrup on the car on which the appellee was injured was bent and twisted when it was furnished and the appellee and other employees invited and required to ride upon it, and before it had ever turned a wheel on the trip to the camp.

The appellee was not a member of the logging crew. He had nothing to do with the cutting, loading or hauling of

logs. He was not a member of the train crew. He had nothing to do with operating the train. He had no connection whatever with any of those matters and no occasion to use, work with, be upon or about the trains or cars except when riding on the same to and from his place of work. It is therefore plain, as to him, that the car was not an instrumentality furnished him until it was placed in the train on which he was to ride and he was invited or required to use it in riding from his place of work to the camp that evening. A contrary contention would be unreasonable, untenable and preposterous.

If the car was defective when the appellant furnished it to the appellee, and the testimony in the case shows conclusively that it was, and if the appellee was injured, and the testimony shows conclusively that he was, and if he sustained his injury in whole or in part because of the defective condition of the car at the time it was furnished, and the testimony in the case shows conclusively that he did, then, under the law there is no escape from liability for the appellant. All of these questions of fact were properly and correctly submitted to the jury and the jury found all of them in favor of the appellee.

Counsel for the appellant cites the case of *Alabama & V. Railroad Company* v. *White,* 63 So. 345, as an authority in support of their contention on this point. We conceive this case to be an authority directly against the contention of the appellant and directly in support of the contention of the appellee.

In the case at bar the proof shows conclusively that the step on the car was bent and twisted when the car was put in the train, and furnished to the appellee on which to ride from his place of work to the camp.

When a servant is injured by reason of a defect in a tool or appliance furnished him by the master it is necessary for him to show either that the defect in the link existed at the time it was furnished by the master or in the event it became defective after it was furnished that the defect had been in existence for a length of time sufficient

to have afforded the master in the exercise of reasonable diligence, and opportunity to inspect it.

We also conceive this case to be an authority directly against the contention of the appellant and directly in support of the contention of the appellee, and we adopt it as an authority in support of our contention that the appellant is liable in this case because the proof is conclusive that the step on the car was bent and twisted at the time it was furnished to the appellee by the appellant. The language of the court in part and on the point at issue is: "That the defect in the link existed at the time it was furnished by the master."

The law is settled in this state and in all jurisdiction of which we have any knowledge that if the master furnishes the servant an appliance in a defective condition and because of the defects the servant is injured, then the master is liable. *Simmons* v. *Oregon Railroad Co.,* 69 Pac. 440; *Southern Railroad Co.* v. *West,* 62 S. E. 141.

But counsel for the appellant, it seems, make the indefinite contention that the car was furnished by the Gulf & Ship Island Railroad Company to the appellee on which to ride to and from his place of work at the time it was delivered by the railroad Company to the appellant, and by substituting, for the purpose of this lawsuit, the Gulf & Ship Island Railroad Company as an employer and as master of the appellee instead of itself. This is not true as a matter of fact nor can it be true as a matter of legal fiction for the whole thing is that the appellant was the employer and master of the appellee and furnished the car so far as the appellee is concerned.

In the case of *Citizens Light, Heat & Power Company* v. *Kendric,* 60 So. 526, it was held that an employer could not escape liability for injuries to an employee from the breaking down of a wagon on which he was riding by showing that the wagon belonged to a third party from whom the employer hired it.

It would be preposterous to say that the appellant had, under the facts and circumstances proved by this record,

exercised reasonable care in furnishing a safe car on which to ride from his place of work to the camp or that appellant had a right to rely upon inspections made by the Gulf & Ship Island Railroad Company from which it received the cars, even if the record in the case showed that the Gulf & Ship Island Railroad Company did inspect them which it does not; that the appellant itself owed no duty to the appellee to make any sort of an inspection of the car before it furnished it to him. In support of this contention we cite the case of *Buckley* v. *Jones,* 79 Miss. 1, 29 So. 1000.

Finally upon this point we submit that it was a question of fact to be determined by the jury whether or not the appellant exercised reasonable care and diligence to furnish the appellee and its other employees a safe, suitable and fit car on which to ride from their places of work to the camp, upon the occasion of the injury to the appellee, and the jury determined that issue against the appellant.

Reply to third assignment of error. The third ground for reversal urged by the appellant is that the proximate cause of the appellee's injury was his gross negligent act in making an improper use of the step of the car by jumping on the same while it was in rapid motion.

Of course this contention of the appellant cannot be sustained and we would answer it merely with the citation of the statute of the state of Mississippi abolishing contributory negligence as a defense in bar to an action for the recovery of damages, for personal injuries, were it not for the fact that it is urged by appellant that the judgment is excessive and ought to be reduced because of what is termed by counsel for the appellant in their brief the gross negligence of the appellee.

The first time the statute abolishing contributory negligence as a defense in bar came under review in this court was in the case of *Natchez & Southern Railroad Company* v. *Crawford,* 99 Miss. 697, 55 So. 596, and in the course of its opinion the courts said: "The question whether,

under this statute, if the plaintiff's injury were brought about by his own wilfulness, recklessness, or gross negligence, it would defeat a recovery by him, notwithstanding the negligence of the defendant, is not presented for decision." In other words the court reserved its decision on this point, it being unnecessary to decision of that case.

But in the case of *Yazoo & Mississippi Valley Railroad Company* v. *Carroll, et al.,* which is reported in 103 Mississippi, 820, 60 So. 1013, this exact and precise question was presented to the court when it was called upon to pass upon the refusal of the lower court to grant an instruction presenting the question to the jury, and in its opinion in that case the court said:

"The point we are now called upon to decide was expressly reserved in *Railroad Companies* v. *Crawford,* 99 Miss. 697, 55 So. 596. This statute is plain, unambibuous and easily construed; prior to its passage any contributory negligence, slight, ordinary or gross, if negligence can in fact be so classified, barred a recovery and the manifest legislative purpose in enacting it was simply to alter the rule on this subject which had been established by the courts, so that such negligence should not thereafter bar recovery, but should simply cause a diminution of the amount thereof. This statute does not deal with, and was not intended to introduce into our jurisprudence, degrees of contributory negligence, but it deals with contributory negligence proper of every character.

The same question was again presented and passed upon in the case of *Mississippi Central Railroad Company* v. *Robinson,* 106 Miss. 896, 64 So. 833, and in its decision in that case the court cited, approved, and followed the Carroll case. *Yazoo & Mississippi Valley Railroad Co.* v. *Williams,* 74 So. 835; *Yazoo & Mississippi Valley Railroad Company* v. *Williams,* decided by this court on April 23, 1917, and reported in Volume 74 at page 835 of the Southern Reporter.

We submit that the verdict and judgment is not excessive. The appellee was a boy eighteen years of age.

He was a bright, handsome, healthy, vigorous looking country boy of very splendid physique and well proportioned and the only defect apparently about him from the crown of his head to the sole of his one foot was the loss of his left foot and a part of his leg.

. W. H. COOK delivered the opinion of the court.

This action is by Andrew Holliman, a minor, through his next friend, against the Tallahala Lumber Company, appellant, for damages for personal injuries alleged to have been sustained by him while in the employ of appellant lumber company, and from a judgment in favor of plaintiff for eighteen thousand dollars the Lumber Company prosecuted this appeal.

The facts in this record, in so far as they are material to the decision of this case, are substantially as follows: The sawmill of appellant is located at Ora, on the Gulf & Ship Island Railroad, about thirty miles north of Hattiesburg, Miss., while the timber of appellant which it was then engaged in cutting and transporting to the mill at Ora was located east of Hattiesburg, in Perry county. In order to reach this timber appellant constructed a logging railroad leaving the main line of the Gulf & Ship Island Railroad at Hattiesburg and extending to or near Runnelstown, in Perry county, a distance of about twelve or thirteen miles. At or near Runnelstown appellant established a camp and constructed homes and boarding facilities for its employees. It also constructed spur or lateral tracks extending from its main line out through its timber. One of these spur tracks extended from the camp into the woods a distance of about fifteen miles, and it was the custom of appellant to transport its employees. who resided at and near the camp, to and from their work, and for this purpose it used a shay engine and logging or flat cars. Appellant did not own the cars which it used in its woods and for transporting the logs, but secured them by contract from the Gulf & Ship Island Railroad

Company.  On each side of these cars there were two metal stirrups or steps, with a rod or handhold above each step, for the use of the employees in boarding the cars.  These steps extended some distance below the bottom of the cars, and in the process of loading and unloading the cars with logs these steps were frequently twisted and bent. There was no conductor on the train which was used in transporting the employees to and from the camp, but this train was in the sole charge of the engineer who operated. it.  It appears that this engineer selected the cars for that purpose from such cars as he found on the side tracks.

Appellee, a boy about eighteen years of age, was employed by appellant as a member of the track crew, and on the afternoon that he was injured appellant's train, which consisted of an engine and two flat cars, was making its regular trip from the woods to the camp.  Appellee, together with about one hundred other employees, was aboard, and after the train had proceeded some miles on the trip to the camp, some defect developed on the engine and the train stopped.  After the train stopped appellee's foreman got off the train and signaled his crew to follow him, and appellee, as well as a large number of other employees, got off the train.  Appellee and other members of the track crew followed their foreman down the track, but when he reached a point near the front of the engine the train started, forward toward the camp, and immediately the employees who had gotten off the train hurriedly began to climb aboard, and as the train passed appellee he endeavored to board it.  According to the evidence for appellee, and there is very little conflict in the evidence on this point, the step, at or near the point where appellee undertook to board the train, was twisted or bent under the car twelve or fourteen inches.  Appellee and other witnesses testified that he undertook to board the train by using this defective step, and that when he swung onto this bent step his foot slipped off the bent step, and his left foot was caught under the wheels of the car and the leg and foot so mangled that it was necessary to am-

putate the leg a few inches below the knee. The speed of the train at the time appellee undertook to board it was variously estimated at from four to eight miles per hour, and appellee testified that he did not observe the bent condition of the step until after he had caught the hand-hold and swung from the ground to catch the step, and that the bent condition of the step was the cause of his foot slipping.

There is testimony to the effect that it was the duty of the engineer to give a signal when his train was ready to leave any given point, and the signal that the train was going to proceed on the trip to the camp was two blasts of the whistle and the ringing of the bell. This signal was not given at the time the train left the point where appellee was hurt, and the engineer testified that he only expected to proceed about two hundred yards further to a point where he could secure water. However, he testified that the reason he did not give the signal before starting his train was that he was busy endeavoring to remedy the defect in the engine and he did not have time to give the signal. There was also testimony to the effect that it was not uncommon for this signal to be omitted, and that when the train started to leave the place where appellee was injured the employees thought it had started for the camp, and that was the reason they undertook to get aboard.

The first assignment of error that is pressed by appellant is that appellee was not engaged in and about the master's business but was acting beyond the scope of his duties when he was injured, and for that reason a peremptory instruction for appellant should have been granted. It is urged that, since appellee left the train and was proceeding down the track in obedience to the orders of his foreman, he abandoned the business of the master and was acting beyond the scope of his duties when he left his foreman and, for his own convenience and comfort, undertook to board a moving train which had not indicated that it was going to proceed to the camp by giving the required

signal of two blasts of the whistle and ringing of the bell.

It was with this assignment in view that we have stated the facts with so much detail, and, under the facts in evidence here, we do not think the act of appellee in undertaking to get aboard this train severed the relation of master and servant. The appellee was aboard a train that had been furnished by the master for the purpose of transporting appellee and the other employees from their places of work to the camp. He left this train in obedience to the orders of his superior, and, since the train had stopped, and he had been called from the train by his foreman, being a member of the track crew, his interpretation of the signal to mean that track work was necessary to enable the train to proceed was entirely reasonable. With no information in regard to the defect in the engine, and having followed his foreman to a point where it could be observed that the track was not defective, with the train moving forward toward the camp, with the other employees hurriedly climbing aboard, appellee's conclusion that the train had resumed its trip to the camp was entirely reasonable and natural, and his act in endeavoring to get aboard the train, where he had a right to ride, was not an abandonment of the master's business and did not destroy the relation of master and servant.

The second ground for reversal urged by appellant is that it was not shown that the appellant knew, or by the exercise of reasonable care and diligence could have known, of the alleged defect in the step or stirrup.

The evidence discloses that the Gulf & Ship Island Railroad Company maintains a system of car inspection in the city of Hattiesburg, and that it was customary to inspect these log cars when they passed through Hattiesburg; but the evidence wholly fails to show that the particular car by which appellee was injured was inspected or was in good condition when it was delivered to appellant. It does not appear when the car was delivered to appellant or how long it had been in use in the woods. It does appear that the only inspection of the cars by

appellant was made after they were loaded with logs. The engineer, who was in sole charge of the selection of cars to make up the train by which the employees were to be transported to the camp on this occasion found this car on a side track in the woods, and, without any examination or inspection thereof, placed it for the use of the employees in riding from their places of work to the camp. The appellee was not a member of the logging or train crew, he had no connection with these matters and no occasion to use or be about the train or cars except in riding to and from his work, and the car was not an instrumentality furnished him until it was placed in the train on which he was invited or required to ride in reaching his home. It very clearly appears from the evidence that the step or stirrup on this car was bent and twisted when it was furnished for the purpose of transporting appellee and the other employees to the camp, and we think the finding of the jury that appellant did not exercise reasonable care and diligence in that regard is abundantly supported by the evidence.

It is next urged that the proximate cause of appellee's injury was his grossly negligent act in making an improper use of the step of the car by jumping on the car while it was in rapid motion, and that for this reason this cause should be reversed. Under the provisions of chapter 135 of the Laws of 1910 (sections 502 and 503, Hemingway's Code), it was a question for the jury as to whether, under the facts in evidence, the appellant was guilty of negligence which contributed to the injury, and all questions of negligence and contributory negligence were properly submitted to the jury under instructions directing that, in the event the jury should find from the evidence that appellant was guilty of negligence, the damages recoverable should be reduced in the proportion to the amount of negligence, if any, attributable to appellee. *Natchez & Southern Railroad Co.* v. *Crawford,* 99 Miss. 697, 55 So. 596; *Yazoo & M. V. R. Co.* v. *Carroll,* 103 Miss. 830, 60 So. 1013; *Mississippi Central Railroad Co.* v. *Robinson,*

106 Miss. 896, 64 So. 838; *Yazoo & M. V. R. Co.* v. *Williams,* 114 Miss. 236, 74 So. 835.

Counsel for appellant further earnestly insists that this case should be reversed for the reason that the jury were misled by certain statements made by one of the counsel for appellee in his closing argument. It appears from a special bill of exceptions taken during the progress of the trial that this attorney stated in his closing argument that—

"If the jury believe the plaintiff would, if not negligent, be entitled to receive forty thousand dollars, that in this case they should return a verdict for twenty thousand dollars."

This statement of counsel was manifestly erroneous, and the objection of counsel to this remark should have been promptly sustained, and the jury instructed to disregard such statement; but, in view of the fact that the written instructions to the jury correctly and clearly announced the rule of law that must guide them in passing upon the questions of negligence and contributory negligence and the reduction of damages on account of contributory negligence attributable to the injured party, it is not probable that the jury was misled by this erroneous illustration, and we do not think this language of counsel would warrant a reversal. The other remarks of counsel which are complained of by appellant were not made of record by a special bill of exceptions, and will not be considered on this appeal.

Finally, it is urged that, in attempting to board the moving train, appellee was guilty of negligence which contributed to his injury, and that, in view of the contributory negligence of appellee, the verdict is grossly excessive. Appellee sued for twenty thousand dollars and the jury returned a verdict for eighteen thousand dollars. In view of the pain and suffering and the nature of the injury in this case, we would not disturb this verdict if the appellee had been free of negligence, but we are convinced that appellee was guilty of negligence which contributed

to his injury, and that the amount of the recovery has not been diminished in proportion to the amount of negligence attributable to him. It is difficult to apportion the negligence properly attributable to each of the parties, but we think it is clear that the jury failed to apply the rule of law applicable under our concurrent negligence statute, and that, under the facts in evidence in this case, the judgment should be reduced to twelve thousand five hundred dollars.

If the appellee will enter a remittitur here for five thousand five hundred dollars, reducing the judgment to twelve thousand five hundred dollars, the judgment will be affirmed; otherwise, it will be reversed and remanded for a new trial on the question of the amount of damages only.

*Affirmed conditionally.*