BUCKLEY v. UNITED GAS PUBLIC SERVICE CO.

(Division B. June 1, 1936. Suggestion of Error Overruled Sept. 28, 1936.)

[168 So. 462. No. 32288.]

Ross R. Barnett, P. Z. Jones, Arden Barnett, and J. Morgan Stevens, all of Jackson, for appellant.

**Watkins & Eager,** of Jackson, for appellee.

288

Argued orally by **Ross Barnett** and **J. Morgan Stevens,** for appellant and by **Pat Eager,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellant instituted an action for damages against appellee and, as a codefendant, against Roy L. Stegall, an employee of appellee, for personal injuries alleged to have been suffered by appellant as a proximate result of the negligence of said employee in the course of his employment. Two trials have been had in the circuit court. On the first trial the jury returned a verdict

against both defendants for eighteen thousand five hundred dollars. A motion for a new trial was made and sustained. The judgment sustaining that motion was upon the ground, among others, that the verdict was excessive. On the second trial, a verdict was rendered against the employee Stegall for ten thousand dollars, but in favor of the employer defendant, the appellee here. The plaintiff appealed in so far as the employer defendant is concerned, but made no mention in the appeal bond nor in the other appeal proceedings as to an appeal as against the other defendant, Stegall, against whom judgment was recovered.

Stegall has attempted a cross-appeal by filing simply a cross-assignment of errors, but has given no appeal bond; and in support of his right thus to prosecute a cross-appeal without bond he cites Crawley v. Ivy, 149 Miss. 764, 116 So. 90. There is no mention in our statutes of a cross-appeal; but the cited case and others have distinctly held that a party who is actually an appellee, that is to say, one against whom and by name an appeal has actually been taken, may prosecute a cross-appeal by filing a cross-assignment of errors without bond. But these cases do not deal with the question whether a party who was a defendant in the trial court, and against whom an adverse judgment has been rendered, may cross-appeal without bond when the direct appeal has been taken only as against another defendant in the trial court who was successful in his defense in that court.

In 3 C. J., p. 1019, it is said: "As a general rule, where a judgment is favorable to one or more codefendants and adverse as to others, the latter should be joined in an appeal or writ of error brought by plaintiff to review the action in favor of the former." An examination of the cases cited in support of that rule shows that either (a) the case was an entire cause of action which could not be separated into two or more proceedings to be separately pursued, or (b) where all the parties defendant

were necessary parties to the litigation not only in the trial court but in the appellate court. See, for instance, the late case Long v. Holden, 216 Ala. 81, 112 So. 444, reprinted in 52 A. L. R. 536. In an action such as now before us, the plaintiff could have sued the offending employee alone, without joining his employer, or he may have sued the employer omitting the employee, or he could sue both as he did here. It follows that since both were not necessary parties, an appeal may be taken against one without joining the other and, in such case, the latter in order to secure a review must file an approved appeal bond, in the manner and within the time required by the statutes.

The appeal now before us involves, therefore, a review in respect to the liability only of the appellee, United Gas Public Service Company, hereinafter to be referred to as the gas company. The injury complained of occurred on February 12, 1935. At that time the gas company was engaged in laying pipe lines and connecting the wells in and about the Jackson gas field. In this work the company employed a large automobile truck and a crew of from twelve to fifteen men to work in conjunction with the truck. Appellant was a member of this crew, and had been for about six months. Stegall was the subforeman in charge of this crew, and generally he drove the truck. The work was of such nature that the location of the operations of the truck and crew shifted and changed or progressed from day to day. Appropriate tools, and of more than a simple character, were necessary to this work, and these tools had to be carried backwards and forwards and from place to place as the work progressed.

In doing this work it was impossible, of course, to follow the regular improved highways of the territory; but the driver of the truck and the crew were compelled to use such unimproved roads or trails through the woods as they could find, and a large part of this was in low and swampy ground. Appellant describes the

particular ground where the injury occurred as "very slick, wet and soft-soggy." It was upon an unimproved and little-used road, muddy, and abounding in mudholes. It was raining at the time.

There was a fixed storage place for the truck and tools in the city of Jackson, and the said subforeman was required to see to it that the truck and tools were returned to this place every afternoon. The arrangement with the crew was that at seven o'clock in the morning they would all report at the storage place, and get upon the truck, suitable places having been provided on the truck for the men to ride. The men were upon an eight-hour employment scale, and the eight-hour period began to run from seven o'clock when they boarded the truck. There was a thirty-minute take-out for lunch in the woods, and the end of the eight hours was 3:30 in the afternoon. At that hour, the crew collected all the tools, loaded them into the places provided for them on the truck, and the crew would get upon the truck for the return trip to the storage place in Jackson. All the crew lived, or temporarily boarded, in Jackson, and none of them, so far as the record discloses, had, or had provided themselves with, any other means of going to and from their said work.

There was great difficulty in getting this truck, or any other similar motor-driven vehicle, over the poor roads and trails and swampy ground, which the crew was compelled to use because of the nature and shifting location of the work as it progressed, especially in the wintertime, and the time of this accident was in the worst of the winter season, so far as the condition of the ground and of poor roads was concerned. The result was that both in going to the work and returning therefrom, the truck would on many days, and often during the day, become stalled in the mud. In all such cases the entire crew would take to the ground and to the mud and would assist in the extrication of the truck by push-

ing, all hands together; and the proof is clear that it was expected of them that they should do so.

All the witnesses agree that the usual and proper method of procedure when a motortruck or automobile gets "stuck in the mud," on a road such as we have described, is to work it out by a series of forward and reverse movements. When the truck can go forward no further and its drive wheels spin without any progress forward, the proper procedure is then to reverse and back the vehicle a few feet, and thereupon go forward until it again stops still, when the same process is repeated, which, with all hands pushing, will finally get the vehicle upon ground where it can travel under its own unaided power.

On the particular occasion in question the truck and crew were on the return afternoon trip. They were ascending a hill upon a muddy road and the truck became stalled in the mud. All hands, including appellant, got out to push. Appellant was pushing at the rear end of the truck, and, as he testified, the driver and subforeman, Stegall, suddenly threw the gear into reverse without any warning, and backed the vehicle against appellee, causing the injuries for which he brought this action.

At the close of all the evidence upon the second trial, the court granted a peremptory instruction in behalf of the gas company, under the fellow-servant rule; and, in support thereof, appellee relies on the cases, Great Southern Lumber Co. v. Hamilton, 137 Miss. 55, 101 So. 787, and Tallahala Lumber Co. v. Holliman, 125 Miss. 308, 87 So. 661; while appellant insists that the case falls within, and is controlled by, Hamilton Bros. Co. v. Weeks, 155 Miss. 754, 762, 124 So. 798, 800. Appellant says that while under his contract of employment he had the privilege and right to be transported on the truck to and from his work, it was not compulsory upon him to avail thereof, and that while he might concede that he would be considered an employee had the injury occurred in going to work, which time was included in his

eight-hour day, this does not apply to the return trip after his eight hours had expired, and that on the return his status was that of an invitee, and not that of an employee.

In Weeks Case the road from his home to the place of employment was a paved highway, and on the day of the injury Weeks had his own car which he intended to use that day in going to and returning from his work, as he had often done before. The employer insisted, however, that Weeks leave his car and avail himself of one of the employer's trucks. Weeks accepted the invitation and on the return trip was injured as a proximate result of the negligence of an incompetent driver, of which incompetency the employer had notice. In that case, after referring to the cases Great Southern Lumber Company v. Hamilton and Tallahala Lumber Company v. Holliman, supra, the court said: "Under the facts of both of those cases it was the master's duty to transport the servant to and from his work; the very nature of the contract of employment between the master and servant showed that the servant was under the master's control while being transported; the transportation being a part of, and incidental to, the employment of the servant. The employment and the transportation were so intimately connected, and dependent one upon the other, that the relation of master and servant existed. In neither of these cases did it appear that the servant had any other means of going to and from his work; the master furnished the particular vehicle for that purpose."

The quoted language is perfectly applicable to, and controlling of the present case. (1) It was the duty of the master to transport appellant both to the work and on the return therefrom. (2) Appellant had supplied himself with no other means of going to and from his work; in addition to which, on most days, an independent means would have been highly inconvenient and perhaps expensive to him because of the shifting locations

and the poor roads and trails over which these locations had to be reached. The distance to the work was sometimes as much as seven miles. (3) It would have been impossible to get the truck and tools to and from the work on such roads, and in the winter and in bad weather without the assistance of the crew, and thus the transportation and the employment were, in the very nature of the particular work, so intimately connected and dependent one upon the other that they cannot here be reasonably separated.

The court was correct, therefore, in applying the fellow-servant rule; and this application is not to be avoided by the fact that Stegall, the driver whose alleged negligence caused the injury, was a subforeman. The said subforeman and appellant and all the others of the crew were, at the particular time, engaged in the common work of extricating the truck from the mud, each at work in plain sight of the other, all engaged in the manual or operative work of laborers, Stegall along with all the others; and the doctrine of fellow servant applies as fully in such case as had Stegall had no other status at any time than a fellow laborer. Harper v. Public Service Corp., 170 Miss. 39, 154 So. 266, and cases therein cited.

Appellant claims as a further ground for imposing liability upon the gas company that Stegall was an incompetent driver, and that the company had notice of this fact. There is proof that Stegall was sometimes reckless as to speed, and recklessness as a trait is, in law, regarded as an element of incompetency. We shall concede for the purposes of this case that there was sufficient proof to go to the jury that, in the sense stated, Stegall was incompetent and that the gas company knew of it. But this does not save the case of appellant as against the gas company, because in order to recover on the ground that an employer has retained in his service an incompetent servant and knew or had notice of that incompetency, the injury complained of must be

the proximate result of the incompetency; or to state the same proposition in other words, the incompetency must be the proximate cause of the injury. This is well settled in the law; was so stated in Hamilton Bros. Co. v. Weeks, supra, and in other cases by our court. The rule is well expressed in New Orleans, etc., Railroad Co. v. Hughes, 49 Miss. 258, 288, wherein it is said that the consequence complained of must be one which "may be fairly traced to his incompetency."

As already mentioned, the negligence complained of on the part of the alleged incompetent servant, Stegall, is that he reversed the truck without warning, and drove it violently back against appellant, who was pushing on the rear of the truck. As already stated, Stegall in going forward with the truck as far as possible, and thereupon reversing, and in repeating this operation, was doing exactly as all competent drivers do under the circumstances, and appellant himself testified that throughout all the months in which they had been working together, Stegall "had been warning us when he was coming back on every occasion," and that the occasion of the injury was the only occasion when he gave no warning that he was coming back into reverse. The trait of recklessness had, therefore, no bearing upon the going forward and reversing as was being done here, because, as already mentioned and as the evidence shows, all competent drivers pursue that precise course when stalled in a muddy road; and the failure on this one occasion to give a reverse signal cannot be ascribed to the said trait of recklessness because appellant, by his own admission, establishes that the driver, Stegall, was habitually careful in that regard and so much so that in all the multitude of occasions when the reverse warning was theretofore due to be given, the instant occasion was the only failure of Stegall to give it. Wherefore, the proof is that, instead of the act of negligence here being one which "may be fairly traced to the incompetency," it is traced away from that trait, and as regards

the particular task upon which they were then and there engaged, is shown simply to have been an exceptional act of negligence for the first time over a long course of experience, and which by momentary forgetfulness under the stress of a difficult and vexatious situation might have happened in the same manner with the most competent and careful of men.

Affirmed.