MISSISSIPPI CENTRAL RAILROAD Co. *v.* LIZZIE ROBINSON *et al.*

[64 South. 838.]

1. RAILROADS. *Injuries to persons on tracks. Presumption of negligence. Code 1906, section 1985, paragraph 4043. Laws 1912, chapter 215. Excessive speed. Death. Admissibility of mortality tables. Appeal and error. Presentation in court below of grounds for review. Necessity. Offers of proof. Negligence. Contributory negligence. Corporative negligence. Trial. Agreement of counsel.*

   Under Code 1906, section 1985, as amended by Laws 1912, chapter 215, providing that proof of injury inflicted by the running of trains shall be *prima facie* evidence of negligence, this *prima facie* presumption is not specific, but general; that is, negligence is presumed in the doing or omission of any act that could have reasonably caused the injury, and consequently, in order that it may be rebutted, the evidence must disclose the doing or omission of every act from the doing or omission of which an inference of negligence *vel non* could be drawn.

2. SAME.

In case a trespasser is killed by a running train the proof must show, not only where deceased was and what he was doing when injured, but should also show what was being done by the servants of defendant to prevent the injury.

3. RAILROADS. *Injury to persons on track. Excessive speed. Code 1906, section 4043.*

'Where a trespasser upon the track was injured by a running railroad train in the corporate limits of a municipality while such train was running at a greater rate of speed than six miles an hour, the maximum speed prescribed by Code 1906,· section 4043, and the injury could have been avoided had the train been running not over six miles an hour, the excessive speed was the proximate cause of the injury.

4. DEATH. *Admissibility of mortality tables. Evidence.*

In a suit by the widow and minor children for the wrongful death of a husband and father who was killed by a running railroad train, testimony as to the life expectancy of a healthy person of the age of deceased as shown by mortality tables was admissible, it being shown that deceased's only infirmity was deafness.

5. APPEAL AND ERROR. *Objection urged in lower court. Necessity for.*

It is a rule that the supreme court on appeal will only regard such objections to the admissions of evidence as were made in the trial in the lower court.

6. APPEAL AND ERROR. *Questions for review. Offers of proof.*

The proper practice is for the party whose evidence is rejected to state to the trial court what the tenor of the proposed testimony is, in order that the trial judge, and the supreme court on appeal may determine its relevancy and competency.

7. NEGLIGENCE. *Contributory negligence. Comparative negligence. Law 1910, chapter 135.*

Laws 1910, chapter 135, providing that the fact that the person injured may have been guilty of contributory negligence shall not bar a recovery but only diminish the damages, applies to all grades of contributory negligence whether slight or gross.

8. TRIAL. *Argument of counsel.*

Where the engineer in charge of the.train doing the injury is not called by the railroad company as a witness, though in attendance on court and convenient to be introduced and could tell

106 Miss. 57

what, if anything, was done to prevent the accident, it was not improper for plaintiff's counsel to comment on such failure to introduce him.

APPEAL from the circuit court of Adams county.

HON. E. E. BROWN, Judge.

Suit by Lizzie Robinson and others against the Mississippi Central Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Truly, Ratcliff & Truly,* attorneys for appellant.

*Reily & Darden,* attorneys for appellee.

The record in this case is lost.

REED, J., delivered the opinion of the court.

Henry Robinson was struck and killed by one of appellant's trains. This suit is brought by appellees, his widow and children, to recover damages. From a verdict and judgment in their favor for one thousand six hundred dollars this appeal was taken.

On November 28, 1911, about eight o'clock at night, Henry Robinson, a man fifty-two years of age, and his son, Willie Robinson, about twenty years of age, returning to their home in Natchez from an afternoon's hunting trip, were walking along and on appellant's railroad track. They attempted to go over a trestle, which is three hundred and thirty-six feet in length. Willie Robinson knew that a train was about due when he reached the trestle, and testified that he looked and listened for its approach, and, failing to see or hear it, started across. The glare of the train's head light was seen when they had gotten about half way across. They both ran. Willie was struck just as he cleared the trestle. His father was a short distance behind, when overtaken and knocked off by the train. He died in a few hours from the injuries sustained. The trestle where Henry Robinson was killed

is within the corporate limits of the city of Natchez. The train, at the time the injury was inflicted, was running at a speed much greater than six miles an hour.

In the declaration it is alleged that the death of Henry Robinson was caused by the running of the train within the limits of the city at a rate of speed greater than six miles an hour. Negligence is also charged in the failure of the appellant to completely operate its train and make proper effort to prevent the injury. To the declaration appellant filed three pleas, the general issue and two special pleas. One of the special pleas presented the defense that the deceased was a trespasser, that his death was not by reason of any recklessness or want of ordinary care upon the part of appellant, and that, after his position of danger and peril was discovered, appellant used all reasonable care and caution to prevent injury. The other special plea states that at the time of his injury deceased was a trespasser, and knew, or by exercising all reasonable care and caution could have known, that a train was approaching; that he was guilty of negligence in being upon the trestle, a place of known danger; and that his gross and reckless negligence contributed to and was a proximate cause of his injury and death. Appellee's motion to strike the special pleas from the file, because they did not present defense sufficient in law, was overruled, and thereupon they filed replications.

Counsel for appellant, in their brief, state that, under the pleadings, "the following were the vital points of controversy to be submitted to the jury: (1) The defense of the general issue by the plea of not guilty, which put the plaintiffs upon the necessity of proving the accident, hurt, and damage. (2) The special plea that the plaintiffs' intestate was a trespasser, and was not hurt by wanton or reckless carelessness. (3) That the plaintiffs' intestate was a trespasser, and that the employees of defendant used every effort to prevent injury after the position of peril was discovered."

At the end of the introduction of testimony by appellees, appellant moved the court to exclude the testimony and direct a verdict in its favor. The court overruled the motion. This is assigned as error. Appellant contends that the trial court, having made its ruling sustaining the sufficiency of the special pleas, should have, under the pleas and the proof, sustained the demurrer to the testimony. Practically the same questions for the consideration of the jury could have been raised under the plea of the general issue as were presented under the three pleas in the case.

The death in this case was caused by the running of the locomotive and cars of appellant company. By the statute (section 1985 of the Code of 1906, as amended by chapter 215, Laws of 1912) this was *prima facie* evidence of negligence. Such negligence, unexplained, entitled appellees to judgment. The rule is stated in the case of *A. & V. Railway Co.* v. *Thornhill,* 63 So. 674, as follows: "Proof of injury inflicted by the running of defendant's cars is *prima facie* evidence of negligence, and, unexplained, entitles the plaintiff to judgment." We quote another rule announced in the Thornhill case: "This *prima facie* presumption, however, is not a specific, but a general, one; that is, negligence is presumed in the doing or omission of any act that could have reasonably caused the injury, and consequently, in order that it may be rebutted, the evidence must disclose the doing or omission of every act from the doing or omission of which an inference of negligence *vel non* could be drawn."

We do not see that the *prima facie* evidence of negligence has been explained in this case. It was incumbent upon appellant company to disclose by evidence the doing or omission of every act from which an inference of negligence *vel non* could be drawn. As this had not been done, it cannot be said that the *prima facie* case had been met. The proof should have shown, not only where the deceased was and what he was doing when injured, but

should have also shown what was being done by the servants of appellant company to prevent injury.

Appellees charge that appellant was liable because of its negligence in exceeding the statutory speed, six miles an hour, in the limits of a municipality. Section 4043, Code of 1906. There is no question about the violation of this statute. The distance from the corporate limits along the railroad track to the trestle was shown by the proof to be 822 feet. According to the testimony of several witnesses, the train, though within the city, was running at a high rate of speed, say by estimate from fifteen to thirty miles per hour. It is also shown that the train, after the emergency brakes had been applied, ran about four hundred feet. It was in evidence that, had the train been going at a rate of not over six miles an hour, it could have been stopped within sixty or sixty-five feet. In the case of *Railroad Co.* v. *Dick,* 95 Miss. 111, 48 So. 401, it is said that the "object of this statute is to have the speed of the train reduced, so as to bring the train under perfect control," It is shown in the proof that from the end of the trestle, looking back in the direction from which the train approached, there is a clear and unobstructed view of the track for about six hundred and seventy-two feet. The speed of the train was not reduced to the maximum permitted within a city. If it had been, it is clear from the evidence that it would have been under such perfect control as to enable the engineer to have stopped it before the men were struck.

The deceased, it is true; was a trespasser when he was injured. This, however, did not relieve appellant from liability. According to the testimony, the train, had it been running at the rate of six miles an hour, could easily have been brought to a stand within the distance from the trestle to the point where the clear and unobstructed view ended. The engineer, with his light upon the track, could have seen the deceased and discovered his position of peril in ample time to prevent the injury had the

train been traveling at a lawful speed. He failed in his duty when he did not do so, and there was negligence.

In this case, the causal connection between the excessive speed and the injury has been shown. The unlawful speed was the proximate cause of the injury. In the case of *Railway Co.* v. *Carter,* 77 Miss. 511, 27 So. 993, WHITFIELD, C. J., delivering the opinion of the court, referring to the liability of a railroad company when speed is the proximate cause of the injury, said: "On the other hand, the general doctrine that the company is not liable to a trespasser, except for willful, wanton, or reckless wrong, is not applicable, and cannot be invoked where a trespasser is injured by a train running more than six miles an hour in an incorporated town; the excessive speed being the proximate cause of the injury. The statute was enacted to prevent the running of trains at a rate of speed exceeding six miles an hour through incorporated towns for the protection of persons and property, whether the persons are trespassers or not. To make the statute applicable only where the injury was willfully, wantonly, or recklessly inflicted would be judicial legislation. The plain letter of the statute, as well as its obvious purpose, alike forbid us to engraft upon the statute such an exception."

Viewing the case from the pleadings and the proof offered by appellees, and in the light of the law, we do not see that the trial court erred in overruling appellant's motion for exclusion of the testimony and a verdict in its favor. Appellant in its defense did not show what was done by its servants to prevent the injury. There is no testimony as to the handling of the train after the position of peril of the deceased was seen, or could have been seen. It is not shown that any effort was made, to avoid the happening. The engineer, the one who must have known all that took place, was not introduced as a witness. Neither did the fireman testify. In short, appellant did not meet the obligation of the law to disclose

by evidence the doing or omission of every act from which an inference of negligence *vel non* could be drawn. It is our conclusion from the entire record that a peremptory instruction could properly have been given to find for appellees.

The action of the court in admitting the American Mortality Tables and in admitting testimony relative to life expectancy is assigned as error. The witness was permitted to testify what is shown by the tables to be the life expectancy of a healthy man fifty-two years of age. Questions were asked regarding the life expectancies of persons of the ages of the several appellees. Objections made by appellant to each and all of these questions were sustained by the court. We quote the question and objection in the testimony admitted: "Q. What is the life expectancy of a healthy man fifty-two years of age? (Objected to, because the life expectancy of the particular individual killed in this case does not have any effect in a case of this kind. The declaration does not cover anything of that kind. Overruled by the court, and the defendant excepted to the ruling of the court.)" The proof shows that the deceased was fifty-two years of age, a carpenter by trade, earning as much as three dollars a day, of general sound health, and having only the physical disability of deafness. Appellees, his family, were shown to be of various ages, from children, the youngest being eight years old, to his widow, who was forty-two years of age. The jury had to consider his value to appellees. His life expectancy was pertinent. The court did not err in its ruling.

Counsel for appellant, in their brief, place the inadmissibility of the tables and testimony on different ground from that stated in the objection. It is the rule that this court, upon the hearing of an appeal, will only regard such objection to the admission of evidence as was made in the trial. We are considering errors of the trial court. We must limit this consideration to the ruling

on the point presented to that court. To do otherwise "would be for this court to review, not the case actually tried in the lower court, but one which might have been tried." *Alexander* v. *Eastland,* 37 Miss. 554; *Moore* v. *Railroad Co.,* 59 Miss. 243.

The action of the court in sustaining an objection to a question propounded to the witness D. F. Mahoney, a flagman on the train when the deceased was struck, as to what was said by a colored man, claimed to be Willie Robinson, said in a conversation with the engineer, Mr. Blakesley, is assigned as error. Upon cross-examination Willie Robinson was questioned about statements he made in a conversation with the engineer just after Henry Robinson was injured. Some statements, indicated in the questions, he admitted to have made and some he denied. Among the latter was the statement that he and his father were tired, and were sitting on the trestle when he heard the train coming. He said that he did not make any such statement upon that occasion to any one.

The engineer, Mr. Blakesley, was not put on the stand. Mr. Mahoney, the flagman, after stating that he went back to the place of the accident in company with the conductor and engineer, and found that a negro man had been struck and was lying beneath the trestle, was asked and answered question as follows: "Q. At that time, or shortly afterwards, did any other colored man come here? A. Yes, sir. Q. Did you ascertain who he was, or what connection he had with the man who got struck? A. Yes, sir. Q. Who was he? A. He was a son of the dead man. Q. Did he state whether or not he was the same man who had been with him? A. Yes, sir; he did. Q. Did any one engage this man who was not struck in conversation? A. Yes, sir. Q. Who was it? A. Mr. Blakesley, the engineer. Q. Did you hear that conversation? A. Yes, sir; I did."

It will be noted that from these questions and answers it is shown that a colored man came up to where Mr.

Blakesley and witness were, "at that time or shortly af-
terwards," the exact time not being given.  He is not
identified by name as Willie Robinson, and the exact
place, whether while in the bayou or on the railroad bed,
is not stated. Then counsel for appellant propounded the
following: "Q.  State to the jury what the colored man
said and what Mr. Blakesley said during the conversa-
tion.  (Objected to by the plaintiff, sustained, and 'the
defendant excepted to the ruling of the court.)"  No other
question was then asked witness by appellant's counsel.
No statement was made on the subject to the court.  No
information was given the court as to what testimony was
expected to be elicited by the question.  The witness was
thereupon turned over to counsel for appellees for cross-
examination.

The rule relative to the necessity for properly offer-
ing testimony which is excluded, upon objection, by the
court, is thus stated in 2 Cyc. p. 697: "To reserve any
question on the ruling of the trial court in excluding tes-
timony, there must be a pertinent question propounded,
and, upon objection being made, a statement to the court
of the testimony which it is expected will be elicited by
the question, and an exception taken to the ruling there-
on."  Mr. Wigmore says, in his treatise on Evidence (vol-
ume 1, par. 20), that the purpose of exception to the rul-
ing of the court is to make clear that the party objecting
and who is unfavorably affected is not satisfied, but takes
issue, and also to sum up and preserve the precise terms
of the ruling for the purpose of appeal.  In further dis-
cussing this subject, in section 3 of the same paragraph,
he continues: "The exception, as formally stated, must
contain all that is necessary for determining the issue
made.  It must therefore include the offer of evidence,
the objection, with its reasons, the ruling, and the notice
of exception taken.  Furthermore, if the ruling was one
excluding a question, so that the offering party is the
exceptor, he must state the tenor of the expected answer

to the question, and if the objecting party is the exceptor, then the tenor of the answer given, so that it may be seen whether this answer was favorable or unfavorable, and therefore whether he has lost by the one or been injured by the other.''

In the case of *Griffin* v. *Henderson,* 117 Ga. 382, 43 S. E. 712, cited by Mr. Wigmore to sustain his text, Judge LAMAR, delivering the opinion of the court, said: ''Ordinarily the exclusion of oral testimony can be made available as error only by asking some pertinent question, and, if an objection is sustained, informing the court at the time what the answer would be, so that he can then determine whether the fact is or is not material. . . . It would never do to grant a new trial until it appeared, not only that the question was proper, but that the answer was material, and would have been of benefit to the complaining party.''

We find that the same rule, touching the necessity of setting forth evidence which has been excluded, has been approved and followed in Mississippi. It has been decided that, if evidence be rejected, it must be set out, so that its materiality may be known. *Ferriday* v. *Selser,* 4 How. 506; *Townsend* v. *Blewett,* 5 How. 503; *Ouilette* v. *Davis,* 69 Miss. 762, 12 So. 27. In *Ferriday* v. *Selser, supra,* it was decided that, ''where the rejection of evidence is assigned for error, its materiality must be shown, or it will not affect the judgment below.'' Judge TROTTER, speaking for the court in that case, and referring to proof of the consideration in a deed, said: ''The deed imports a good consideration on its face, and was certainly evidence of Ferriday's title, unless it was impeached by proof. But here, again, the objection is met by the palpable fact that none of the testimony in the cause offered by Selser is stated, so that it is impossible for this court to decide whether the opinion of the court in rejecting these bonds was or was not proper. The necessity or propriety of this proof is not perceived by any-

thing in the bill of exceptions. We are therefore not at liberty to decide that the court erred, upon the mere conjecture that there may have been proof on the other side to which these bonds might have been applicable. We can indulge in no presumptions against the regularity of the proceedings below. The party who challenges the legality of the opinion of the inferior tribunals must prove the error by the record.''

We quote from the opinion of Judge COOPER in the case of *Ouilette* v. *Davis, supra,* as follows: "The proper practice is for the party whose evidence is rejected to state and show by his bill of exceptions what the tenor of the proposed testimony was in order that the trial judge, and this court on appeal, may determine its relevancy and competency. All reasonable intendment must be made against one who, by general language in a bill of exceptions, attempts to show error in the action of the trial court.'' The tenor of the expected answer was not stated. The court was not informed at the time what the answer would be, so that he could determine whether the facts sought were or were not material. There is not presented in the exception to the ruling of the court all that is necessary to determine in this appeal the issue made by such exception. We cannot say that the court erred in sustaining the objection.

Counsel for appellant, in their brief, direct our attention to the comparative negligence statute (chapter 135 of the Acts of 1910), and the reservation in the case of *Railroad Co.* v. *Crawford,* 99 Miss. 697, 55 So. 596, of the question 'whether under this statute, if the plaintiff's injuries were brought about by his own willful, reckless, or gross negligence, it would defeat a recovery by him, notwithstanding the negligence of defendant.'' This question has since been answered in the case of *Railroad Co.* v. *Carroll,* 103 Miss. 830, 60 So. 1013. In delivering the opinion of the court in that case, Judge COOK, said: "This statute is plain, unambiguous, and easily con-

strued. Prior to its passage contributory negligence—any contributory negligence, slight, ordinary, or gross, if negligence can in fact be so classified—barred a recovery, and the manifest legislative purpose of enacting it was simply to alter the rule on this subject, which had been established by the court, so that such negligence should not thereafter bar recovery, but should simply cause a diminution of the amount thereof. This statute does not deal with, and was not intended to introduce into our jurisprudence, degrees of contributory negligence, but it deals with contributory negligence proper of every character.''

The language of one of the counsel for appellees in his closing argument to the jury, in referring to and commenting upon the failure of the appellant to introduce the engineer as a witness, is assigned as error. This is based upon the fact that the engineer was available to appellees as well as to appellant. The rule that the failure of either party to examine a witness accessible to both should not be the basis of inference has, like all rules, its exceptions. Among these is the case like the present, where the engineer in charge of the train doing the injury is not called by the railroad company, though in attendance on court and convenient to be introduced. His position and duties place him where he can see the entire occurrence when a person is struck on a track, as in the case at bar. The question of the company's negligence is at the same time a question of his negligence. Was there any omission by him? Was he in his place of duty? He can tell what, if anything, was done to prevent the accident. Neither the language of the counsel, nor the failure of the court to instruct the jury to ignore it, is error.

Quite a number of instructions were given in this case. Considering and construing them together, taking them as a whole, we do not find in the giving and refusing to give error sufficient for reversal.

*Affirmed.*