TALMADGE *et al. v.* SEWARD.

(Division A.   Dec. 2, 1929.   Suggestion of Error Overruled Jan. 13, 1930.)

[124 So. 791.   No. 28150.]

**B. B. Carmichael,** of Greenville for appellant.

**Farish & Bell,** of Greenville, for appellees.

Argued orally by **B. B. Carmichael,** for appellant, and by **H. P. Farish,** for appellee.

McGowen, J., delivered the opinion of the court.

Appellant filed this bill in the chancery court, seeking a cancellation of the tax deed executed by the sheriff of the county to Seward, the appellee, in pursuance of a tax sale. The grounds upon which the bill sought relief were:

First, that because of the description of the land sold it was incapable of being intelligently sold in forty-acre tracts by the sheriff and tax collector, and therefore the deed was void.

Second, that the clerk failed to give notice to the lienors, as required by the statute, and therefore the sale was void.

Third, that the sheriff did not sell the land in forty-acre tracts, as required by the statute.

Fourth, that his representative, Hanson, had sought to pay the taxes on this land before the period of redemption had expired, and had been informed by the sheriff that the taxes were paid, and that this action of the sheriff was caused by an interchange of names of the owners of land east and west, respectively, in a given section.

The appellee answered, denying the material allegations of the bill, and, the case being submitted, the chancery court dismissed the bill, and denied the relief therein prayed for. Hence an appeal here.

On January 27, 1925, T. J. White became owner of the lands in controversy, and on December 20, 1925, he executed a deed of trust to Clark, trustee, G. B. McLemore, beneficiary, on these lands to secure the judgment of twelve thousand five hundred dollars, which deed was on December 20, 1925. McLemore assigned in writing the deed of trust executed by White to the International Life Insurance Company, and this assignment was recorded in June, 1925. The International Life Insurance Company reassigned in writing this deed of trust to G. B. McLemore, and the same was recorded August

11, 1925, on which day McLemore assigned the same instrument to the Northam Interests, Inc., and this assignment was likewise recorded on August 11, 1925. On April 28, 1928, the Northam Interests, Inc., assigned this same instrument, in writing, to Henry Talmadge & Co., the appellants here, and same was recorded on that day.

On May 29th this deed of trust was foreclosed, and complainants were the purchasers at the sale, and the trustee executed a deed conveying the land to the complainants. These lands were sold for taxes by the sheriff of the county on April 5, 1926, to Seward, the appellee, for a consideration of three hundred ninety-nine dollars and seventy-two cents, and the deed was executed on the same day, and on May 18, 1928, was filed and recorded by the chancery clerk of said county.

On the 1925 land assessment rolls the land of White was assessed to Davis: "Joshua Davis East one-half, East one-half and West one-half, West one-half, East one-half and East one-half, West one-half, West one-half, East one-half, Section 8, Township 19, Range 8." The lands west of the lands above described were then erroneously assessed to T. J. White. The deed from the sheriff and tax collector to Seward contained this description.

It is undisputed that the clerk of the chancery court did not notify any of the lienors above named, within the statutory period before the redemption time expired. It was also agreed that certain witnesses, if present, would testify that, if any of the lienors had received notice, they would, in turn, have notified the last lienor of the assignment, the Talmadges. It will be noted that the assignment of the Northam Interests, Inc., to Henry Talmadge was recorded after the sale, and subsequent to the expiration of the two-year redemption period.

We will now consider, in turn, the grounds upon which cancellation of the tax deed was sought by the appellant:

First. That the description of the land does not comply with the requirements of sections 8213 and 8214, Hemingway's Code of 1927 (sections 4283 and 4284, Code of 1906), in that the land sold was not made up in ordinary subdivisions of sections. It will be noted that section 8214 makes the requirements of section 8213 directory, provided the land is so described as to be identified. It is true that the lands in this case were described with reference to the section in longitudinal divisions, not latitudinally, as lands are usually described; but the first description easily identifies one hundred sixty acres of land, and the second description easily identified eighty acres of land in the given section, and the plain fractional part of a forty-acre tract is easily identified. And while it is true, as urged by counsel, that the sheriff may have had some difficulty, yet the fact that it would be difficult for the sheriff to divide the land in forty-acre tracts, and sell it in accordance with section 8247 of Hemingway's Code 1927 (section 4328, Code of 1906), would not relieve him of the duty of complying with the statute as to selling in forty-acre tracts. Counsel concedes that it could be done; we think it could be easily done, and that it was not a very difficult task. The lands being capable of identification from the description in the land assessment roll, the sale was effectual to pass the title, in so far as this question is concerned.

Second. On the point that the chancery clerk failed to give notice to the lienors whose lien appeared of record, it will be noted that the assignment from the Northam Interests, Inc., to Talmadge & Co. was recorded on April 28, 1928, several days subsequent to the date of the expiration of the period of redemption, consequently, subsequent to the time in which the chancery clerk was directed by the statute to notify lienors, and the fact that Talmadge & Co. were not lienors of record, or known to the clerk, is apparent.

Counsel's contention on this point is that, if the clerk had notified the International Life Insurance Company, and other lienors whose liens did appear of record, before the period of redemption had expired, the appellant would then in turn have been notified by them, and the land would have been redeemed.

Chapter 241, section 2, of the Laws of 1922 (section 8254, Hemingway's Code 1927), does provide that the clerk shall ascertain the names of all the lienors, mortgagees, and beneficiaries of all lands sold for taxes from the record, and shall, within ninety days, and not less than sixty days, prior to the expiration of the time of redemption, give the prescribed notice to all such lienors that the land had been sold for taxes, and that the title would become absolute, unless the land was redeemed.

It will be observed that the complainants here are complaining because notice was not given to other lienors than themselves. They did not contend that the lien they held by assignment was known to the clerk, or that it appeared of record in the clerk's office; but the contrary is clearly shown—that they had no such lien of record at the time the clerk was required to give this notice.

Section 3 of the act (section 8257, Hemingway's Code of 1927) clearly puts counsel's contention beyond controversy, the last clause of which is as follows: "And a failure to give the notice to such lienors, required by section 2 of this act shall render the tax title void as to such lienors, *and as to them only,*" etc.

It is not contended that the complainants were lienors of record, or that the clerk had any knowledge that they were lienors. The statute is restricted to the class described in section 2 (section 8254, Hemingway's Code of 1927), of which the appellants were not members. The statute cannot be extended to former assignors whose liens were of record, and to whom the clerk did not give notice, they having no interest, the purpose of the stat-

ute being to give notice to those interested, and the clerk could not possibly have given notice to the appellants. The failure to give notice to other parties who had no interest at the time the notice should have been given by the chancery clerk, cannot operate to avoid the tax sale.

Third. It is next insisted that the sheriff did not sell the lands as required by the statute, offering a single forty-acre subdivision, and adding thereto until sufficient land was sold to pay the taxes. On this point counsel has entirely failed to present the question in the manner required by this court. He offered the deputy sheriff as a witness, asked him a number of questions as to the method and manner of conducting the sale, and it was shown that he made this particular sale. There was objection raised to the questions, and the witness did not answer; nor did counsel put into the record anywhere what the answer of the witnesses would be. The record must show what the evidence is, in order that we may determine its competency. He does not make any statement to the court as to what he expects this witness to swear, nor does the witness make any answer to the questions excluded by the court. We cannot consider here, or guess at, what the answers of the witness would have been, a point which is discussed and decided in the case of Miss. Cent. R. Co. v. Robinson, 106 Miss. 896, 64 So. 838.

Fourth. As to what the lienors who appeared of record would have testified, we are entirely ignorant. Counsel made no effort to have it put in the record, and he is in no position to urge that the action of the court below in excluding this evidence, in this state of the record, was error. This assignment of error is controlled by the case of Miss. Cent. R. Co. v. Robinson, supra.

We find no reversible error in the action of the chancellor in dismissing appellants' case, and denying leave.

Affirmed.