Anderson *et al. v.* Anderson *et al.*

(Division A. Sept. 29, 1930.)

[130 So. 91. No. 28793.]

**W. H. Fisher,** of Memphis, Tenn., for appellants.

**Dinkins & Wilroy,** of Hernando, for appellees.

Argued orally by **W. H. Fisher,** for appellant, and by **N. E. Wilroy,** for appelleee.

**McGowen, J.,** delivered the opinion of the court.

Bertha Anderson and other children of George Anderson, deceased, exhibited their bill in the chancery court of De Soto county against Julia Anderson, his widow, and two grandchildren of George Anderson, by which bill it was sought to have Julia Anderson, who had theretofore qualified as administratrix of the estate of George Anderson, removed as such administratrix and to have

the court declare her right to participate or share in the distribution of the estate forfeited for the alleged reason that she willfully caused or procured the death of her husband. The estate consisted of a one hundred-acre farm and some personalty.

The answer filed by the respondents, the appellees here, was in effect tantamount to a denial of all the material allegations of the bill. There was also filed with the answer a demurrer on the ground that the bill was multifarious. This demurrer seems never to have been pressed, and the lower court heard the case on its merits, dismissed the appellants' bill, and from such decree an appeal is prosecuted here.

The record discloses that two physicians in charge of a negro hospital in Memphis testified that the decedent came to his death because of a wound or contusion on the left rear part of the skull at the junction of the parieto-occipital bone. They had made an X-ray which showed the contusion and the fracture of the skull to be an inch or two inches in length, and said that this fracture was caused by a hard blow and that a fall to the floor or against a certain kind of cream separator would not probably have caused the wound. They testified that decedent was a man between sixty and seventy years of age and that his general health was good; that when he was brought to their hospital from his home in De Soto county he was bleeding from the left ear, and that he had to be detained in bed by straps; the disturbed mental condition was a natural result of the blow.

There was further testimony that before sundown Julia Anderson appeared at the home of a nearby neighbor very much agitated and said that she and her husband, George, had been in a "mix" over her purchase of a sack of flour, and George sought to lay hands on her and she ran; having eluded him, she looked back and saw her son strike him a blow. Other witnesses testified that the decedent pointed out a place where they had knocked him

down and that he pointed toward Julia and said "they have killed me and done beat me," and that Julia would undertake to flee from the room when he accused her.

For the defendant the local physician testified that he had, prior to the occasion of this, treated Anderson for nephritis and heart trouble. He said that the skull was not fractured, that on the night of the injury he dressed the wound and it was a mere scalp wound, and that Anderson's main trouble was his constitutional ailments. He testified that on the morning George Anderson, the decedent, was removed to the hospital in Memphis, over his protests and over the protests of the widow, he saw him walking about in the yard; that afterwards he saw him in the hospital; that he was strapped to a bed, and that this treatment was bad for him; he was suffering with a heart lesion, and it was bad on his heart to fight against being strapped to the bed. There was testimony on both sides contradicting witnesses, and the record shows that Anderson died some three or four days after these physicians in Memphis had trephined his head.

We deem it unnecessary to state further facts, save to say there was evidence tending to show that at times the decedent was not rational when making some statements, some irrational statements are testified to by witnesses; so that the case rests upon the statements that the wife fled from the home to a neighbor and said that she saw her son strike her husband, and that when her husband, deceased, pointed an accusing finger toward her, she would seek to leave the room. These are about the essential facts upon which the appellant bases his case that the wife killed, or procured to be killed, her husband.

It will be observed that there is a sharp conflict in the evidence of the physicians as to the nature and seriousness of the wound and the attendant circumstances.

First, it is contended by the appellants that the chancellor found contrary to the law and the facts. We will

only say that if it be said that a case was made out, it was a weak one from the appellants' standpoint. On the other hand, every material statement in the record on the main point is contradicted. In this state of the case we think the chancellor was not manifestly wrong in holding the evidence insufficient to establish that the appellee willfully procured her husband to be slain.

Second, during the course of the trial, without objection, the appellee was permitted to offer in evidence the record of the indictment, trial, and acquittal of the appellee on a charge of murder in the killing of her husband. We are not called upon to discuss this assignment of error, for the reason that it went in the record without objection. In fact, the appellants seemed to have concurred in the introduction of this record. In the oral argument it was stated that there was an objection, but we are unable to find it in this record.

Third, it is insisted that certain of the complainants were offered as witnesses and on objection of appellant were not permitted to testify, and this is said to be reversible error. On this proposition the question propounded to the witness did not indicate the relevancy of the evidence expected to be delivered by the several witnesses; there was no statement to the court as to the general tenor of the testimony to be delivered. If we were to reverse this case on this ground, we would be in the attitude of holding another trial of this case because of the refusal of the court to permit certain witnesses to testify, and they might, on another trial, testify to nothing in the world material to the settlement of the issue involved. The counsel should have stated to the court the general nature of the testimony he expected to elicit from these witnesses, then the court would have been able to have determined upon its relevancy and competency, and if it were in error this court would have been able to intelligently pass upon the question presented. This court has long ago settled that if evidence

be rejected it must be set out so that its materiality may be known. Ferriday v. Selser, 4 How. 506; Townsend v. Blewett, 5 How. 503; Ouilette v. Davis, 69 Miss. 762, 12 So. 27; Mississippi Cent. R. Co. v. Robinson, 106 Miss. 896, 64 So. 838; Talmadge v. Seward, 155 Miss. 580, 124 So. 791.

Fourth, it is also insisted that the court erred in permitting evidence of the good reputation of Julia Anderson for peace and violence in the community in which she lived. It is sufficient to say that even if this were error there was no objection to it, and we doubt if a case of this kind should be reversed on that ground alone, where the evidence seems to preponderate in favor of the defendant on the facts.

We find no reversible error in this case.
Affirmed.