DUPREE *v.* WILLIAMS *et al.*

(Division A. Sept. 29, 1930.)

[130 So. 93. No. 28596.]

Hathorn & Williams, of Poplarville, and Hannah & Simrall, of Hattiesburg, for appellant.

J. C. Shivers, of Poplarville, for appellees.

Cook, J., delivered the opinion of the court.

The appellant, H. A. Dupree, filed a bill of complaint in the chancery court of 'Pearl River county against Dr.

S. M. Williams, Mrs. Mollie A. Williams, J. A. Edwins, and the Pearl River County Bank, alleging in substance, that from March to August, 1923, Dr. S. M. Williams was operating a retail gas and oil station at Picayune, Mississippi, under the name of the Williams Service Station; that during that period of time he purchased from the American Oil Company, through the appellant, as its agent, a large quantity of gasoline for which he owed a balance of one thousand, five hundred forty-three dollars and thirty-eight cents; that this indebtedness of Dr. Williams to the American Oil Company was transferred and assigned to the appellant; that while the said Dr. Williams was so indebted to appellant he fraudulently transferred to his wife, Mrs. Mollie A. Williams, certain real and personal property; that this real estate was afterwards transferred by Mrs. Williams to the defendant J. A. Edwins. It was further charged that these deeds were executed for the purpose of hindering and delaying the creditors of Dr. Williams in collecting their debts, and therefore were fraudulent and void as to the American Oil Company, and the appellant, its assignee, and prayed that they be canceled. There was also an alternative prayer that in the event the defendant J. A. Edwins should be held to be an innocent purchaser for value of the said real estate, a decree should be entered fixing a lien on certain notes held by the Pearl River County Bank, and which had been executed by Edwins to Mrs. Williams in payment of the purchase price of said property. The bill of complaint further charged that Dr. S. M. Williams purchased the property from R. J. Williams, and that after having executed the conveyance to his wife, and shortly before the filing of the bill of complaint, he had altered the deed to him by forging the name of his wife as the grantee therein, so as to make it appear that it had been originally made to his wife, instead of to him.

The Pearl River County Bank and J. A. Edwins filed answers to the bill, denying all the allegations of fraud

as to them, and denying all knowledge of any fraudulent dealings between Dr. Williams and his wife. Dr. S. M. Williams filed a separate answer, denying that he had ever had any dealings whatever with the American Oil Company or the appellant, denying that he had engaged in business under the name of Williams Service Station, or had anything whatever to do with the operation of the business, and denying that he had ever purchased any gas or oil from either the appellant or the American Oil Company, or in any other way contracted any indebtedness to them. He charged that the Williams Service Station was owned and operated by G. G. Williams, and that this fact was well known to the appellant and the American Oil Company, and denied all the allegations of the bill as to forgery of the deed, and as to the fraudulent conveyance of property to his wife. Mrs. Mollie A. Williams filed an answer in which she adopted the answer of Dr. S. M. Williams in so far as it related to any dealings between Dr. Williams and the appellant and the American Oil Company, and denied the charges of fraud against her.

Upon the filing of an answer by the defendant Dr. S. M. Williams, the appellant filed a supplemental bill, charging, among other things, that if the averments contained in the answer of Dr. Williams were true as to the original deed of conveyance having been made to his wife, then the said defendant, Dr. Williams, was carrying on business with his wife's property without any written agreement having been made and filed for record, and was under the law her agent in the conduct of said business, and that she (Mrs. Mollie A. Williams) was therefore liable to the plaintiff for the account sued on. After the filing of this supplemental bill of complaint, Dr. Williams died, and the cause was revived against his heirs, but not against his personal representative, and thereafter Mrs. Mollie A. Williams and the children of Dr.

Williams filed their answer to the supplemental bill of complaint, thereby substantially reiterating the issues made by the former pleadings.

Upon the proof offered at the hearing of the cause, the chancellor entered a decree expressly finding that during the year 1923 and thereafter the Williams Service Station was owned and operated by G. G. Williams, and was not owned by Dr. S. M. Williams, and the said S. M. Williams was not engaged in the operation and carrying on of the business in his own name or on his own account on the land, and in the buildings, or with the means of his wife, Mrs. Mollie A. Williams. He further found, however, that by writing two certain letters, which were introduced in evidence, the said S. M. Williams either assumed the indebtedness sued on, or by his actions in connection with the operation of the said Williams Service Station, he became liable for the indebtedness, and entered a decree awarding a recovery against the heirs of the said S. M. Williams for the amount of the indebtedness, to be enforced solely out of such non-exempt property as was received by them from the estate of the said S. M. Williams. He further found that the evidence did not show any fraudulent transfer of property by the said S. M. Williams to the defendant Mrs. Mollie A. Williams, and from the decree so entered the complainant, H. A. Dupree, prosecuted a direct appeal, while the heirs of the said S. M. Williams prosecuted a cross-appeal from the decree against them.

The finding of the chancellor that the Williams Service Station was owned and operated by G. G. Williams, and not by S. M. Williams, is supported by the great weight of the testimony, and this finding must be affirmed unless there was error in the exclusion of the testimony of the appellee Mrs. Mollie A. Williams. The appellant called the defendant Mrs. Williams as an adverse witness, but upon objection being interposed that she was not a competent witness to establish liability against her hus-

band, the objection was sustained, and the appellant assigns as error the exclusion of her testimony. In support of this assignment it is argued that if this testimony had been admitted the weakness in appellant's proof might have been strengthened, and the deficiency therein supplied, thus enabling the appellant to establish that Dr. Williams owned and operated the Williams Service Station and contracted the debt sued on, and particularly to establish that the conveyance from Dr. Williams to his wife was fraudulent and void as to the creditors of Dr. Williams. Assuming for the purpose of this decision only that under the statute the witness was competent to testify against her husband, there is nothing in the record to show or indicate that the appellant was prejudiced by the refusal of the court to permit her to testify. The only question propounded to the witness was about a matter that was otherwise abundantly proved, and which, in fact, was admitted by the pleadings. There was no showing or statement in the record as to the general tenor and nature of the testimony the appellant expected to elicit from this witness, from which the court might determine its materiality, relevancy, and competency, and that such a showing is necessary has been repeatedly held by this court. See Anderson v. Anderson, 130 So. 91, this day decided, and the authorities there cited. The only thing in this record that might indicate the nature of the testimony that would have been given by the witness is her answer to the bill of complaint filed in the cause; and from this answer the natural conclusion is that her testimony would have been of no value to the appellant in his attempt to establish liability against Dr. Williams.

On the cross-appeal the appellees assign as error: First, the holding of the court that by writing the two certain letters which were introduced in evidence, the said S. M. Williams either assumed the indebtedness sued for, or by his actions in connection with the operation of the

Williams Service Station he rendered himself personally liable therefor; and, second, that the court erred in rendering a decree against the appellees as heirs at law of the said S. M. Williams.

As stated above, the weight of the testimony supported the view that the Williams Service Station, to which the gasoline was sold and charged by the American Oil Company, was owned and operated by G. G. Williams, a son of Dr. Williams, at the time the gasoline was purchased and thereafter, until the business was finally closed out. There is testimony that Dr. Williams was sometimes seen at and around this service station; and G. G. Williams testified without dispute that during the summer of 1923 he took employment in Louisiana, and remained there two or three months; that while he was in Louisiana he left the business of the service station in the hands of Buck Myers, who had been working for him at the service station for some time prior thereto; that he requested his father to take some general supervision over the business and his employee, Myers, while he (G. G. Williams) was absent; and authorized and requested him to sign such checks as might be necessary in conducting the business during his absence; and that he instructed the bank to recognize and accept such checks of the Williams Service Station as might be signed by his father while he was away.

While the said G. G. Williams was in Louisiana, Dr. S. M. Williams wrote two letters to the appellant, H. A. Dupree, one dated August 8, 1923, and the other dated September 23, 1923. The first of these letters is signed "Williams Service Station by S. M. W.," and reads as follows: "Find enclosed check for one thousand dollars you will please hold same till 13th. also get us itemized statement for June and July. We will be ready to check up by Aug. 17 or 18." The second of these letters reads as follows: "In Re Acct. Will say: Since Aug. 20/23 we have purchased approximately five thousand gallons

gas per month from your Co. for cash. Now at that time we stopped—not closed,—acct, but certain conditions over which we had no control have arisen that make it very inconvenient for us to pay old acct. now, but about Dec. 15, we will I think be able to begin retiring acct at about one hundred per month. Hoping this will satisfy your co. Beg to remain Yours Williams Ser. Sta. By W.''

In our judgment there is nothing in these letters to indicate a purpose on the part of the said S. M. Williams to assume, or upon which it can be held that he did assume, the indebtedness. They were written for and on behalf of the Williams Service Station, and the mere fact that they were written by S. M. Williams is not sufficient to charge him with liability for his son's debts; neither does the proof show such acts and conduct of the said S. M. Williams in and about the business as would render him liable for debts contracted in carrying it on. The fact that a father was seen at the business place of his son, or that he may have performed some service in the conduct of the business, or may have, at the request of his son, taken some general supervision over the business and its employees during the absence of the son, is not sufficient to charge him with liability for debts contracted in carrying on the business. Therefore we are of the opinion that the court below erred in holding that the said S. M. Williams became and was liable for the debts sued for, and in fixing a charge against any of his property that may have passed to his heirs at law; and consequently the decree of the court below will be affirmed on the direct appeal, and reversed on cross-appeal, and the bill of complaint finally dismissed.

Affirmed in part, and reversed in part.