**GEORGIA SOUTHERN & FLORIDA RAILWAY COMPANY, Appellant,**

v.

**A. H. PERRY and Evelyn Perry, husband and wife, Appellees.**

**No. 19837.**

United States Court of Appeals Fifth Circuit.

Jan. 15, 1964.

Rehearing Denied Feb. 20, 1964.

H. P. Osborne, Jr., John M. McNatt,. Jr., Mathews, Osborne & Ehrlich, Jacksonville, Fla., for appellant.

W. C. O'Neal, Gray, Chandler, O'Neal, Carlisle & Avera, Gainsville, Fla., for appellees.

Before TUTTLE, Chief Judge, JONES, Circuit Judge, and MORGAN, District Judge.

JONES, Circuit Judge.

The appellees, A. H. Perry and his wife Evelyn Perry, recovered judgment against the appellant in the district court for personal injuries to Mrs. Perry and the death of their daughter resulting from what we generally refer to as a crossing accident, where a locomotive of the railroad struck an automobile driven by Mrs. Perry in which the daughter was riding. The judgment was for the amounts found by a jury: $65,000 for the death of the child and $10,000 for Mrs. Perry's injuries. Three questions are presented on the appeal, and recitals. of fact will be made only to the extent. required to show how the questions. arose.

The railroad concedes, for the purpose of the appeal, that there was negligence on its part which would entitle the Perrys to recover; but, it contends, Mrs. Perry was guilty of contributory negligence which, under the Florida Comparative Negligence Statute,[1] would reduce the amount of recovery.

The railroad right-of-way ran through a timbered area. On February 9, 1961, between 3:30 and 4:00 P.M., Mrs. Evelyn Perry, wife of A. H. Perry, left their home in her husband's automobile,

---

[1]. "No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence. If the plaintiff and the agents of the company are both at fault, the former may recover, but the amount of recovery shall be such a proportion of the entire damages sustained, as the defendant's negligence bears to the combined negligence of both the plaintiff and the defendant." Fla.Stat.Ann. § 768.06.

drove along a dirt road a short distance from her home, crossed the tracks of the railroad, reached a paved road, and there picked up her seventeen-year-old daughter, a high school student, who had been brought to the meeting point by a school bus. In returning toward her home the left front of the car was struck by a freight train of the railroad. Mrs. Perry received slight injuries. The daughter received injuries from which she died immediately.

At the trial the Perrys, as plaintiffs, introduced the testimony of fourteen witnesses. The railroad, as defendant, called the conductor of the train to the stand. He testified that he and the train flagman were in the caboose of the nine- or ten-car train and knew nothing of the accident until after it had happened. The railroad produced the brakeman as a witness. He testified that he was seated in the middle seat of three seats in the engine looking forward down the track. The engineer, Houston, was on his right and the fireman, Dumas, on his left. As the train approached the crossing, it was traveling between 30 to 35 miles per hour on a very slight downgrade. When the engine was approximately 400 feet from the crossing, he saw an automobile on his right about 8 or 10 feet from the crossing. The automobile was moving slowly toward the crossing and he hollered to the engineer to shoot the brakes. At about the time he hollered, the engineer applied the engine brakes in full emergency and blew the engine whistle. There was no whistle post for the crossing and it was not customary to blow for it. At the time the brakes were applied and the whistle first blown, the automobile was 3 to 4 feet from the crossing and the engine was somewhere within 400 feet of the crossing. He saw the automobile come to a stop with its wheels between the two tracks, roll backwards slightly, and just before the engine reached the crossing he ducked down to avoid any flying glass. After the train came to a stop beyond and clear of the crossing, he returned to the crossing and testified as to what he saw and heard there. He stated that it was his duty to look around the curves while the train was moving to watch for sparks, for anything that might be dragging, and for hotboxes. He had no duties about keeping a lookout ahead or about applying the brakes or blowing the whistle. The engineer and the fireman were present at the trial but were not called as witnesses and were excused by railroad counsel without having testified.

Over the objection of the railroad the court permitted the Perrys to introduce two photographs taken at the scene of the accident. These were taken from the eye level of the driver of a car of the make and model driven by Mrs. Perry at the time of the accident, and at distances from the track of 6½ and 13 feet. The first of these showed an unobstructed view down the track, and the view shown by the second was obstructed. The railroad then sought to introduce two photographs from like driver positions taken from 6½ and 10-foot distances from the track. Both of these photographs showed a locomotive 1162 feet down the track from the crossing. The district court excluded these photographs, the judge saying:

"The shadows shown in these photographs will show a shadow cast from the right on to the—cast on to the right-of-way. They show several large patches of shadow between the locomotive pictured and the camera. Mr. Johnson [the railroad's claim agent] tells me that he has, that his locomotive is green with white on it. The vegetation is not all green; certainly anybody who has been in the woods knows that everything is not green but there still is a good deal of green about when you have growing pine trees, all of those from this section of Florida know that, especially young sapling trees, that you see a lot of green down near eye-level; and what you could see in this patch of shadow of a green locomotive may be and probably is entirely different from what you could see of

the green and white locomotive farther away, out as this clearly is, out in the bright sunlight. It's—you can see by the way the sun is bearing on it.

"I think that these photographs showing the locomotive at that distance is calculated to mislead the jury as to what would have been visible to the motorist, Mrs. Perry, and I think that the possible or probable prejudice to her case outweighs the reasons for the defendant wanting to place the pictures in evidence."

The Perrys offered and the court admitted in evidence mortality tables as to the life expectancy of each of the Perrys, over the objection of the railroad.

The court instructed the jury, over the railroad's objection, that,

"In circumstances where it would be natural and reasonable for a party to produce a witness to testify at a trial and where it is apparent that the witness is employed by or in the power or control of that party to produce as a witness and where it is reasonable to assume that the witness has knowledge of facts which are relevant and material to the issues of the trial, the failure to produce such witness creates an inference against the party failing to produce him that the witness, if produced, would have given testimony unfavorable to the party failing to produce him."

The three questions before us on the railroad's appeal from the judgment against it are (1) whether it was error to exclude from evidence the photographs tendered by the railroad; (2) whether it was error to give the jury instruction as to the inference that might be drawn from the failure to produce witnesses; and (3) whether it was error to admit in evidence the mortality tables showing the life expectancy of the parents.

■■ A posed photograph is admissible when it is shown that it represents a correct likeness of the scene, object or person that it purports to represent, and the sufficiency of the preliminary showing rests largely in the discretion of the trial judge. Moore v. Louisville & Nashville Railroad Company, 5th Cir. 1955, 223 F.2d 214; Kortz v. Guardian Life Insurance Co., 10th Cir. 1944, 144 F.2d 676, cert. den. 323 U.S. 728, 65 S.Ct. 63, 89 L.Ed. 584; 3 Jones on Evidence, 5th Ed. 1195, § 629. The exclusion of the photographs tendered by the appellant was within the discretion committed to the trial judge and no abuse of that discretion is shown.

■ The railroad makes a strenuous argument that error was committed by the court's comment with respect to the inference that might be drawn from the failure of a party to introduce an available witness. To buttress this contention the railroad stresses the decision in Weeks v. Atlantic Coast Line Railroad Co., Fla.App., 132 So.2d 315, decided in 1961. There it was said:

"The weight of authority supports the general rule that the failure of a party to introduce an available witness does not give rise to any inference or presumption that the testimony of the witness, if he had been called, would have been unfavorable to such party, where other qualified witnesses have testified for the party concerning the same matters, and the testimony of the uncalled witnesses would have been merely cumulative or corroborative." 132 So. 2d 315, 316.

This statement of principle was all that was required in the case from which it is quoted. It is correct as far as it goes but it does not go far enough to answer the question which is presented in this case. There was a question here as to the cause of the so-called accident and whether there was negligence on the part of the railroad in the operation of its train. Although it has admitted that it was negligent for the purpose of this appeal, it denied that it was negligent in the trial and attempted to persuade the jury that it was free from negligence.

The brakeman who testified for the railroad had no duty with respect to operating the locomotive, he had no duty to maintain a forward lookout, he had no responsibility for ringing the bell or blowing the whistle.

■ It is a general rule that the failure of a party to call as a witness an employee who possesses peculiar or special knowledge of facts essential to the employer's case, may create an inference that the testimony of such employee would be unfavorable to the employer, and that such failure, and the permissive inference that may be drawn from it, are proper subjects for comment by the court or counsel. 31 C.J.S. Evidence § 156c, p. 853 et seq., 2 Wigmore on Evidence, 162 et seq., § 285. The rule has been tersely stated by Professor McCormick in this language:

"It is generally agreed that when a potential witness is available, and appears to have special information relevant to the case, so that his testimony would not merely be cumulative, and where his relationship with one of the parties is such that the witness would ordinarily be expected to favor him, then if such party does not produce his testimony, the inference arises that it would have been unfavorable." McCormick, Evidence, 534, § 249.

■ In order to justify a comment upon the failure to call a witness by a party having control over the witness, or the giving of an instruction as to the drawing of an inference from such failure, it is generally held, as was held in the Weeks case, that the testimony of such uncalled witness would not be merely cumulative. In the Weeks case the nature of the employment and the duties and responsibilities of the witness who testified were not shown, nor were those of the employees of the railroad who were not called. In our case it was the duty and responsibility of the engineer, shared in some degree by the fireman, to maintain a lookout, cause the whistle to be blown and the bell to be rung when required, and in general, to operate the locomotive free from negligence. Negligent operation of the locomotive would, in most instances, be negligence of the engineer. See Florida Cent. & P. R. R. Co. v. Williams, 37 Fla. 406, 20 So. 558; Atlantic Coast Line Railroad Co. v. Miller, 53 Fla. 246, 44 So. 247; Louisville & Nashville Railroad Co. v. Harrison, 78 Fla. 381, 83 So. 89; Atlantic Coast Line Railroad Co. v. Britton, 109 Fla. 212, 146 So. 842; Louisville & Nashville Railroad Co. v. Byrd, 5th Cir. 1962, 298 F.2d 586; Mississippi C. R. Co. v. Robinson, 106 Miss. 896, 64 So. 838. The duties of the railroad's engine employees who were not called, contrasted with the absence of any obligation on the part of the employee who was called, to discharge the duty owed by the railroad to users of grade crossings, give to the engineer, and perhaps also to the fireman, a standing superior to that of the brakeman. The duties of the engineer, and to a degree, of the fireman, place them in such position that their evidence would have been superior to that of the brakeman and hence not to be dispensed with on the ground that it would be merely cumulative. Roehl v. Ralph, Mo.App., 84 S.W.2d 405. No error resulted from the court's comment. In so holding we do not say that if the engineer had been called it would have been necessary, in order to avoid an unfavorable inference, to put the fireman and brakeman, or either, on the witness stand.

■ In considering whether it was proper to place before the jury the mortality tables which gave the estimated life expectancy, we look to the statute for some clue as to the standards by which damages for mental pain and suffering of the plaintiff parents are to be measured. All we get from the statute is that the recovery shall be in such amount as the jury may assess. The measure of damages for a parent's loss of services in an action for the wrongful death of a minor child is only the value of the services that the parent would be entitled to between the death and the majority of the child. Meeks v. Johnston, 85 Fla.

248, 95 So. 670. There is no such restriction in the measure of damage for mental pain and suffering. There is no exact yardstick by which recovery is to be measured and the solving of the difficulty in determining the amount of the award is left to the discretion of the jury unless clearly arbitrary or so great as to be shocking to the judicial conscience or indicate that the jury was influenced by prejudice or passion. Coast Cities Coaches v. Donat, Fla.App., 106 So.2d 593. The mental condition of a parent resulting from the wrongful death of a child is a proper matter for consideration in fixing damages for mental pain and suffering. Coast Cities Coaches v. Donat, supra. There was, in this case, testimony of a psychiatrist that Mrs. Perry had been put into a depressed neurotic state by the death of her daughter. His testimony was that the reaction was "a hurt that's turned inside and you just can't get rid of it." Thus it appears that from the evidence the jury might have found that the mental pain and suffering would continue throughout the lifetime of the parents. As evidence of the probable lifetime length the mortality tables showing life expectancy were admissible.

The judicial attitude in Florida toward the statute of that state is well depicted in the words of Mr. Justice Terrell, speaking for the Supreme Court of Florida and saying:

"Those who have not brought a child into the world and loved it and planned for it, and then have it suddenly snatched away from them and killed can hardly have an adequate idea of the mental pain and anguish that one undergoes from such a tragedy. No other affliction so tortures and wears down the physical and nervous system. Psychosomatic illness of a serious nature may follow. The emotions may be unstrung, the nerves put on edge and the end effect may be a period in a rest home, a mental hospital, serious physical derangement and sometimes death. Damage for mental pain and suffering is one of the late developments in the law and its potentialities are not restricted as they formerly were because so much has been learned of the evil consequences that flow from mental injury." Winner v. Sharp, Fla., 43 So.2d 634, 636–637.

We think no error has been shown. The judgment of the district court is

Affirmed.