114 So.2d 807 (1959)
CITY OF TAMPA, a municipal corporation, Appellant,
v.
Tula JOHNSON, and her husband, Robert J. Johnson, Appellees.
No. 1058.
District Court of Appeal of Florida. Second District.
September 23, 1959.
*808 Ralph A. Marsicano, Neil C. McMullen, and William R. McCown, Tampa, for appellant.
Bucklew, Ramsey & Phillips, Tampa, for appellees.
KANNER, Judge.
A jury verdict for $7,500 was awarded to Tula Johnson in a negligence action against the City of Tampa for personal injuries sustained by her; and a like amount based on a claim for loss of consortium and services and for medical expenses, past and future, was awarded to her husband, who was also a party plaintiff. The city sought a directed verdict, which was denied. It challenges the judgment basically, questioning the sufficiency of the evidence to support the charge of negligence on its part and also asserting that the trial court's admission of mortality tables into evidence was erroneous.
Mrs. Johnson, accompanied by two of her friends, was walking on a sidewalk in the City of Tampa, when she stepped on a manhole cover which tilted or flipped and caused her to fall into the subterranean hollow beneath it. Dropping to the level of her arm pits, she caught herself on the edge of the manhole. As a result of the fall, she suffered numerous bruises, abrasions of her right leg and side, a cut in her left leg, severe bruising of her right breast, and an injury to her back. The medical testimony established that extensive treatment became necessary as a result of these injuries and that the back injury is a permanent one. Additionally, there appeared subsequent to the accident a malignant melanoma in a lymph node in Mrs. Johnson's left axilla or arm pit, established as metastatic in nature or as emanating from a malignancy having its origin in another part of her body, the origin being undetermined in this case.
As to the basic question of negligence, the effect of the city's position is that the evidence neither established knowledge by it of the sidewalk defect nor showed that the unsafe condition existed for a length of time prior to the accident sufficient to charge it with notice.
A former city employee, Midgette, who for a number of years had been assistant city engineer in charge of maintenance for the Bureau of Streets for the City of Tampa, testified on behalf of the Johnsons. His testimony showed that the cover of the manhole through which Mrs. Johnson fell was of cast iron and rested in a cast iron ring or seat, that it was so worn that it would flip or tip up when stepped on in a certain spot, and that because of this it was replaced after the accident. His testimony *809 also showed that the manholes were opened at intervals for cleaning by laborers in the maintenance division, that these laborers would report if they found worn manhole covers or covers which they thought were worn, that an engineer would then check the condition of such covers, and that there had been no report on this particular cover until the police report of the accident. The cover was on the manhole at the time of the accident, and a casual observation would not call the attention of a pedestrian to its then existing dangerous condition, although an inspection by the city would have revealed the defect.
A municipality is not an insurer of pedestrians traveling on its streets or sidewalks, however it is responsible for injuries resulting from failure to repair defects in them. It is also a city's duty to exercise reasonable diligence in this regard after the unsafe condition of the street or sidewalk has become known or ought to have become known. See City of Jacksonville v. Foster, Fla., 1949, 41 So.2d 548; Singleton v. City of Jacksonville, Fla.App., 1958, 107 So.2d 47; and 16 Fla.Jur., section 109, p. 125.
In the City of Jacksonville v. Foster case, Fla., 1949, 41 So.2d 548, 549, a tree afflicted with root decay was blown over by a strong wind and fell across an automobile, with resultant injuries to the vehicle and its driver. In its opinion the Supreme Court pointed out that the tree, an evergreen, appeared generally healthy because it retained its green leaves, but that its root decay, not immediately apparent to a passerby, was discernible through inspection which would have revealed a fungus growth at the earth line and a decayed place or hole at the bottom of the tree trunk. The court asserted that this condition created a genuinely insidious danger; that the jury "reasonably deducted that this condition, from its very nature, had existed for such length of time as to charge the city with awareness of it" and was justified in concluding that by the exercise of reasonable diligence the defect could have been found and remedied.
We are here dealing with a defect not perceptible to a casual observer but ascertainable through inspection of the worn manhole cover. It is not disputed that the cover was so worn that this worn condition created the defect. The jury, as was true in the City of Jacksonville v. Foster case, supra, could reasonably have deduced "* * * that this condition, from its very nature, had existed for such a length of time as to charge the city with awareness of it" and that through the exercise of reasonable care this unsafe condition could have been discovered, corrected, and injury avoided.
In protesting the use of the mortality tables, the city complains that all the medical evidence agreed that, at the time of the trial, Mrs. Johnson's probable life expectancy was about three and one-half years, that the cancerous condition itself was not caused by the trauma, and that the evidence did not show how much, if any, her life expectancy was shortened by the aggravation of the malignancy.
At the time of the trial Mrs. Johnson was forty years of age. The mortality tables purported to show that she had a normal life expectancy of 28.18 years. The medical evidence showed that her probable life expectancy ranged from about two to three and one-half years, abbreviated primarily by the cancerous condition. However, there is medical testimony that the injuries Mrs. Johnson sustained, including the permanent back injury, as well as the aggravation of her cancerous condition, would also contribute to her shortened life expectancy. The evidence did not establish that the malignancy affecting Mrs. Johnson was caused by the injuries she received, and the trial judge clearly instructed the jury to that effect. The evidence, however, plainly established that Mrs. Johnson's cancerous condition was aggravated by the trauma.
The cases cited by the city to sustain its position fall within the minority *810 rule which precludes the admission of mortality tables into evidence as bearing upon the life expectancy of one not in average good health. See Annotation, 116 A.L.R., section II(b), p. 422. However, by the weight of precedent, it is recognized that the lack of normal health in a person whose life expectancy is sought to be determined does not preclude the admission of mortality tables into evidence. The rationale of this principle is that the fact of such ill health or disease goes only to the weight of the mortality tables as evidence and not to their admissibility. The probative value of mortality tables may be weakened or even fully destroyed by evidence of disease or ill health of a person whose life expectancy is in issue. Annotation, 116 A.L.R. p. 416; and 20 Am.Jur., Evidence, section 975, pp. 823-824.
Longevity is not a certain thing. A jury is not bound by mortality tables, but these constitute only one of many factors that may be considered in estimating life expectancy. Each case must depend upon its own particular factual situation. It is from the totality of pertinent factors that the jury should gauge the particular life expectancy in issue.
Our view is that we should align ourselves with the majority rule, and this is strengthened by the decision of our Supreme Court in the case of Miami Transit Co. v. Scott, Fla., 1952, 58 So.2d 542. That decision concerned as plaintiff an obese woman suffering from a rheumatic heart condition at the time of the accident from which she sustained permanent injury to her back. The court there expressed the view that, in estimating life expectancy of the plaintiff, the jury would not be bound by mortality tables but could consider them with all other evidence bearing on the plaintiff's physical condition and life expectancy.
In Florida the rule is that, when the evidence shows a permanent injury, the admission of mortality tables into evidence is authorized. Atlanta & Saint Andrews Bay R. Co. v. Pittman, 1938, 130 Fla. 624, 178 So. 297. Here it is clear that the evidence showed permanent injury and that Mrs. Johnson's life expectancy was affected thereby. The circumstances reveal no error here in the admission of the tables.
The jury was adequately instructed as to the proof required and as to the rights and responsibilities of the respective parties on the issues created under the pleadings. We find no cause for reversal, and the judgment is affirmed.
Affirmed.
ALLEN, C.J., and REVELS, P.B., Associate Judge, concur.