441 So.2d 1142 (1983)
GROSS BUILDERS, INC., Etc., et al., Appellants,
v.
Dorman A. POWELL, Individually and As Representative of the Estate of Franz D. Powell, Deceased, Appellee.
No. 82-1903.
District Court of Appeal of Florida, Second District.
November 9, 1983.
Rehearing Denied December 14, 1983.
Chris W. Altenbernd of Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, for appellants.
Douglas A. Mulligan of Williams & Milton, St. Petersburg, for appellee.
DANAHY, Judge.
We address two questions in this case, both of which are questions of first impression in Florida. The case reaches us as an appeal by the defendants in a wrongful death action from final judgment for the plaintiff entered upon a jury verdict.
Franz Powell, a three-year old boy, drowned on February 25, 1980, in a swimming pool at the apartment complex where he and his family resided. Franz's father brought this action, as personal representative of Franz's estate, against the owners and managers of the apartment complex. A jury returned a verdict for the plaintiff in the amount of $300,000, representing $150,000 to each of Franz's parents.
The first issue concerns the use at trial of the apartment owner's denials of the plaintiff's requests for admission. The requests for admission and the denials were as follows:
3. Please admit that the swimming pool was adjacent to the playground area, on February 25, 1980.
Denied

*1143 5. Please admit that you were aware that minor children played in and around the pool area on/and before February 25, 1980.
Denied
6. Please admit that you were aware these minor children swam in the pool on/and before February 25, 1980.
Denied.
8. Please admit that on an occasion prior to February 25, 1980, another child had drowned in one of your pools.
Denied.
The plaintiff called as his first witness Mr. John Connally, the resident manager of the apartment complex. Mr. Connally's testimony indicated that he was aware that children played in the pool area and swam in the pool prior to February 25, 1980. Following his testimony, the plaintiff was allowed to read to the jury the four requests for admission quoted above and the apartment owner's denials of those requests. All of the defendants objected and moved for a mistrial. The objections were overruled and the mistrial denied. We hold that the trial judge erred in this respect and reverse for a new trial.
Florida Rule of Civil Procedure 1.450(a) reads in part as follows:
A party may call an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party... .
The plaintiff defends the reading of the requests for admission and the denials as a legitimate effort to impeach Mr. Connally. The defendants respond by pointing out that Mr. Connally was called by the plaintiff as his own witness and, usually, one may not impeach his own witness. § 90.608(2), Fla. Stat. (1981). We are satisfied, however, that Mr. Connally fell in the category of "managing agent" of the defendant owner of the apartment complex within the meaning of rule 1.450(a) and thus was subject to impeachment by the plaintiff. Our supreme court has twice discussed the meaning of the expression "managing agent" in this context. Seaboard Air Line Railroad Co. v. Ford, 92 So.2d 160 (Fla. 1956); Tucker Brothers, Inc. v. Menard, 90 So.2d 908 (Fla. 1956). Our holding that Mr. Connally was a managing agent of the defendant apartment owner is supported by those decisions. Further, we note that the term managing agent as used in the former corresponding federal rule received a broad, practical construction. 10 Moore's Federal Practice (2d Ed.) § 611.03 at VI-166.
We have no difficulty, therefore, in finding that Mr. Connally was subject to impeachment by the plaintiff. However, the means utilized for this purpose were inappropriate. Section 90.608(2) provides that in the case of an adverse witness, a party calling that witness may contradict the witness by other evidence or may prove that the witness has made an inconsistent statement at another time. As the defendants point out, the denials to the requests for admission were made by Mr. Connally's employer, not Mr. Connally. We know of no authority, nor has any been cited to us, which supports the proposition that a witness may be impeached by the contradictory statements of someone else which cannot, under any theory, be attributed to the witness.
Accordingly, we reverse and remand for a new trial. For purposes of that new trial, we address the second issue raised by the appellants.
The trial judge instructed the jury that under Florida's Wrongful Death Act, the parents of a deceased minor child are entitled to recover mental pain and suffering from the date of injury. § 768.21(4), Fla. Stat. (1981). The judge then instructed the jury that "in determining the duration of such mental pain and suffering, you shall consider the life expectancies of the surviving parents." The appellants argue that the parents' recovery for mental pain and suffering must be measured by the remaining minority years of the child had the child *1144 lived, not by the life expectancies of the parents.
No party to this appeal has cited to us any Florida case addressing this question and our own research has revealed none. However, we find that the United States Court of Appeals for the Fifth Circuit has answered the question, in a case arising from Florida. Georgia Southern & Florida Railway v. Perry, 326 F.2d 921 (5th Cir.1964). The Florida statute in 1964 provided that parents of a deceased minor child could recover in a wrongful death action "such sum for the mental pain and suffering of the parent (or both parents) if they survive, as the jury may assess." § 768.03(1), Fla. Stat. (1963). The present statute provides that damages in a wrongful death action may be awarded to each parent of a deceased minor child "for mental pain and suffering from the date of injury." § 768.21(4), Fla. Stat. (1981). Thus there is no significant difference, for present purposes, between the 1964 version of the statutory law and the current statutory provision.
In the Perry case, the trial judge allowed the parents of a deceased minor child to place before the jury the mortality tables which reflected the parents' estimated life expectancies. The defendant argued on appeal that this was erroneous, but the federal court did not agree. The court said: "It appears that from the evidence the jury might have found that the mental pain and suffering would continue throughout the lifetime of the parents. As evidence of the probable lifetime length, the mortality tables showing life expectancy were admissible." We agree with the philosophy and reasoning of the federal court in that case.
Therefore, we hold that in a wrongful death action, it is proper to instruct the jury that in determining the amount of an award to parents of a deceased minor child for mental pain and suffering, the jury may consider the joint life expectancies of the child and the parents.
REVERSED and REMANDED for a new trial.
BOARDMAN, A.C.J., and LEHAN, J., concur.