909 So.2d 491 (2005)
Virginia McQUEEN, as Personal Representative of the Estate of Milton McQueen, Deceased, Appellant,
v.
Mohan W. JERSANI, M.D., Appellee.
No. 5D04-3648.
District Court of Appeal of Florida, Fifth District.
August 26, 2005.
*492 Colette M. Heck, Daytona Beach, for Appellant.
Robert G. Churchill, Jr., Rogelio J. Fontela and Craig A. Dennis, of Dennis, Jackson, Martin & Fontela, P.A., Tallahassee, for Appellee.
PLEUS, C.J.
Virginia McQueen ("Virginia"), as personal representative of the estate of her late husband, Milton McQueen ("Milton"), appeals from an order entitled Order Granting Motion for Judgment Notwithstanding the Verdict and Alternatively, Granting Motion for Remittitur. The parties agree that a remittitur was not ordered by the trial court and that remittitur is not an issue on appeal.
Virginia brought a medical malpractice action against her late husband's cardiologist, Dr. Mohan W. Jersani, alleging the defendant breached the applicable standard of care resulting in Milton's death as a result of a heart attack. By the time the case reached the jury, the only relief sought by Virginia related to that provided under section 768.21(2), Florida Statutes, namely for Virginia's loss of the decedent's companionship and for mental pain and suffering from the date of the injury.
Expert medical testimony was presented by each side and the jury returned a verdict in favor of Virginia in the amount of $60,000, reduced to $36,000 as a result of a finding that the decedent was 40% comparatively negligent.
The defendant moved for a judgment notwithstanding the verdict. The trial court granted the motion finding that, as a matter of law, Virginia failed to establish through competent substantial evidence that the defendant breached the standard of care, that such breach proximately caused Milton's death, and that the damages awarded were proven. The court stated in its order that the defendant had saved Milton's life on more than one occasion by timely diagnosing several diseases and that Dr. Stoner, the plaintiff's medical expert, was unable to testify within a reasonable degree of medical probability that Milton would have lived one more moment past the day he died even had he received the appropriate standard of care to which Dr. Stoner testified. The court noted that Dr. Stoner agreed with the defense expert that the defendant had extended Milton's life throughout the years he treated him. The court added there was a "woeful lack of evidence" of Virginia's "past or future loss of her deceased husband's services, comfort, society and attentions."

Standard of Review
The order on appeal is one granting a judgment notwithstanding the verdict ("JNOV"). In reviewing such an order, an appellate court must view the evidence in a light most favorable to the non-moving party, resolve all conflicts in the evidence *493 in favor of the non-movant, and construe every reasonable conclusion which may be drawn from the evidence in favor of the non-movant. See Russell v. KSL Hotel Corp., 887 So.2d 372 (Fla. 3d DCA 2004). A JNOV is appropriate only in situations where there is no evidence upon which a jury could rely in finding for the non-movant. Id.; Fast Laundry II v. Gray, 861 So.2d 81 (Fla. 3d DCA 2003).
Virginia argues that viewing the evidence in a light most favorable to her and resolving all conflicts in her favor establishes ample support for the jury's verdict. She asserts that Dr. Stoner's expert testimony amounts to competent substantial evidence that the defendant breached in many ways the applicable standard of care owed by a cardiologist to his patient and that such breach resulted in Milton's death. Virginia additionally maintains her own testimony as to her relationship with her husband of 49 years and the effect his death has had upon her constitutes competent substantial evidence of the loss of companionship damages awarded by the jury. The defendant counters that Virginia failed to present any evidence of the life expectancy of Milton which evidence is essential for consideration on a loss of companionship claim. The defendant additionally asserts that the causation evidence was insufficient. In particular, the defendant argues that Dr. Stoner refused to opine regarding Milton's life expectancy at the time of his death and Dr. Stoner's concession that Milton may have exceeded his life expectancy resulted in causation evidence so equivocal as to be worthless.

Damages Under Wrongful Death Act for Loss of Consortiumevidence of life expectancy
Section 768.21, Florida Statutes, entitled "Damages," provides in relevant part:
All potential beneficiaries of a recovery for wrongful death, including the decedent's estate, shall be identified in the complaint, and their relationships to the decedent shall be alleged. Damages may be awarded as follows:
(1) Each survivor may recover the value of lost support and services from the date of the decedent's injury to her or his death, with interest, and future loss of support and services from the date of death and reduced to present value. In evaluating loss of support and services, the survivor's relationship to the decedent, the amount of the decedent's probable net income available for distribution to the particular survivor, and the replacement value of the decedent's services to the survivor may be considered. In computing the duration of future losses, the joint life expectancies of the survivor and the decedent and the period of minority, in the case of healthy minor children, may be considered.
(2) The surviving spouse may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury.

(Emphasis added).
Subsection (1) primarily addresses economic damages and it is in that context that the language exists that "in computing the duration of future losses, the joint life expectancies of the survivor and the decedent ... may be considered." The subsection uses the word "may" and not "shall," indicating that the statute permits but does not require consideration of joint life expectancies. Subsection (2) in allowing for a surviving spouse's recovery for loss of companionship and protection and for mental pain and suffering does not reference consideration of the life expectancies of the decedent and surviving spouse. This omission suggests that the trier of fact is not required by the terms of *494 the wrongful death act to consider such life expectancies when calculating a surviving spouse's claim. While no Florida case law addresses the evidentiary requirement regarding a decedent's life expectancy under subsection (2), in BellSouth Telecommunications, Inc. v. Meeks, 863 So.2d 287 (Fla. 2003), the supreme court considered the meaning of subsection 768.21(3) which provides for recovery by a decedent's children "for lost parental companionship, instruction and guidance and for mental pain and suffering from the date of injury." The precise issue in Meeks concerned whether the damages recoverable by a minor child under subsection (3) are limited to the period of minority.
The supreme court answered the question in the negative. In doing so, the court explained that damages under subsection (3) should be calculated based on the joint life expectancies of the minor child and the deceased parent. The court noted that subsection (3), unlike subsection (1), contains no limitation on damages to the period of minority.
In discussing calculation of damages based upon life expectancies, the court explained:
Similarly, in this case [the minor son Kevin's] pain and suffering could be lifelong. Thus, under Gross Builders [Inc. v. Powell, 441 So.2d 1142 (Fla. 2d DCA 1983)[1]]rationale, Kevin's damages should be calculated based on his life expectancy. However, because it would be expected that a child would lose his or her parents due to natural causes during the child's lifetime, a child's pain and suffering damages related to a parent's premature death should be limited by the parent's normal life expectancy. This is, in fact, the measure of damages indicated by the district court below.
863 So.2d at 292.
The Meeks court additionally noted that its interpretation of subsection (3) as to measure of damages comports with Florida Standard Jury Instruction 6.6g which applies to the damage claim of a surviving minor child:
The loss by (name all minor children) of parental companionship, instruction, and guidance, and [his][her] [their] mental pain and suffering as a result of the decedent's injury and death. In determining the duration of such losses, you may consider the [joint life expectancy of the decedent and [the surviving child] [each of the surviving children]] [life expectancy of [the surviving child] [each of the surviving children]] together with the other evidence in the case.
In re Standard Jury Instructions Civil Cases, 522 So.2d 364, 368 (Fla.1988) (emphasis added).
Observing that the standard jury instructions are presumptively correct, the court explained that the instruction indicates that damages are to be based on the life expectancies of the minor child and deceased parent. 863 So.2d at 292. After referencing the absence of any case law addressing the appropriate measure of damages under subsection (3), the court explained:
In the absence of a definitive case, instruction 6.6g provides a useful indication of the prevailing judicial understanding regarding a surviving minor child's damages in a wrongful death action. In the present case, we find no persuasive reason to depart from this *495 understanding of the Legislature's intended measure of damages under section 768.21(3).
863 So.2d at 292.
Accordingly, while subsection (3) itself contains no reference to joint life expectancies and the standard jury instruction provides that the jury "may consider" evidence of joint life expectancy, such evidence relates to the measure of damages in an action brought pursuant to that subsection.
As to the instant case which is brought under subsection (2) the Meeks court referenced the presumptive symmetry intended by the legislature among subsections (2) (surviving spouse's recovery for loss of consortium), (3) (minor child's recovery for lost parental companionship), and (4) (parents' recovery for pain and suffering of deceased minor child). 863 So.2d at 292. Florida Standard Jury Instruction 6.6f, which deals with the elements of damages available under subsection (2), provides (similar to Jury Instruction 6.6g), that:
[The jury shall consider the following elements of damage:] The wife's loss of the decedent's companionship and protection, and her mental pain and suffering as a result of the decedent's injury and death. In determining the duration of such losses, [the jury] may consider [the joint life expectancy of the decedent and the surviving spouse] [life expectancy of the surviving spouse] together with the other evidence in the case.
522 So.2d at 367-68 (emphasis in original).
The Committee on Standard Jury Instructions explained that (as with Instruction 6.6g), subsection (2) of the statute and case law do not make joint life expectancy the only measure for the duration of future loss by the surviving spouse and the instruction is intended to allow a jury determination, if warranted by the evidence, that in a particular case, the surviving spouse's loss will continue beyond the joint life expectancy until the survivor's death, or will end before that period has elapsed. Id. This comports with pre-1972 wrongful death decisions holding that in assessing wrongful death damages, a jury is not limited to consideration of testimony as to probable life expectancy. See Bould v. Touchette, 349 So.2d 1181, 1185 (Fla.1977).
The analysis in Meeks applies equally to this case insofar as the measure of damages is concerned and the duration of the damages is calculated based on the joint life expectancies of the surviving spouse and the deceased spouse. This conclusion is consistent with basic principles governing the recovery of damages. Typically damages cannot be based on mere guesswork or speculation but must have an evidentiary basis. Smith v. Austin Development Co., 538 So.2d 128 (Fla. 2d DCA 1989). Without some evidence of life expectancies, how can the trier of fact intelligently measure the duration of the surviving spouse's loss?
There has traditionally been some arbitrariness involved in arriving at a fair assessment of damages for loss of consortium for the wrongful death of a spouse. See, e.g., Legare v. U.S., 195 F.Supp. 557, 561 (S.D.Fla.1961) (award for loss of companionship and consortium of wife during couple's joint life expectancy "is, of necessity, almost arbitrarily arrived at.... Who can value the love and companionship, the strength and solace in times of sorrow, the joyous partnership in times of happiness, of a steadfast and devoted wife?"). Indeed, in instructing the jury here, the court noted the absence of an exact standard of measurement. However, the duration of a loss can, in some respects, be reasonably quantified. Even in Legare, and other state court decisions decided *496 under the old wrongful death statute, the courts referenced the standard of joint life expectancy. See, e.g., Stanford Fruit Growers, Inc. v. Frazier, 158 Fla. 135, 27 So.2d 906 (1946); Pidcock-Jones Co. v. Watson, 141 Fla. 376, 193 So. 305 (1940).[2]
Given that some evidence relevant to joint life expectancies is necessary to a damages claim under section 768.21(2), the remaining inquiry concerns whether substantial competent evidence in this regard was presented by the plaintiff.
As to Virginia's life expectancy, the trier of fact could assess life expectancy based solely upon her testimony and physical appearance at trial. See Stanford Fruit Growers, 158 Fla. 135, 27 So.2d at 906. In other words, expert testimony as to the surviving spouse's life expectancy was unnecessary.
The decedent's life expectancy is another matter since the trier of fact is unable to directly assess the decedent's physical condition and mental acuity. The defendant does not argue that Virginia's failure to introduce a mortality table is fatal to her damages claim[3] but rather asserts that Virginia presented no evidence as to her husband's life expectancy other than that he may have exceeded his reasonable life expectancy at the time of his death.
The trier of fact must be given some evidence from which it can intelligently consider the decedent's life expectancy. Clearly this may be in the form of expert testimony from a physician who is familiar with the decedent's medical condition prior to death. In the present case, Virginia's expert, Dr. Stoner, was unable to opine as to the 79-year-old decedent's life expectancy and conceded that the decedent may have exceeded his reasonable life expectancy at the time of his death. The defendant argues that this concession by the plaintiff's own expert is fatal to her damage claim. However, this argument ignores the well-settled principle that the trier of fact may accept or reject all or any portion of an expert witness' testimony. See Chesnoff v. State, 840 So.2d 423 (Fla. 5th DCA 2003). Further, this argument overlooks the existence of other evidence from which the jury could have estimated the decedent's life expectancy.
Virginia gave detailed testimony bearing on her husband's health and physical condition prior to his death, and as to his lifestyle and activities. Expert testimony as to his life expectancy, while helpful to the jury, was not essential. The existence of other evidence from which life expectancy can be determined distinguishes this case from decisions relied upon by the defendant for the proposition that expert testimony which is equivocal or confusing may be deemed to lack probative value. The jury had before it competent evidence from which it could consider the probable life expectancy of the decedent. The defendant's challenge is really to the weight to be accorded the evidence which was ultimately for the jury. The trial court reversibly erred in granting the JNOV on the basis that no evidence of damages was presented.

Evidence of Causation
The defendant claims the JNOV was additionally proper because the plaintiff *497 failed to present evidence that his negligence caused the decedent's death.
Viewing the evidence and reasonable inferences in the light most favorable to the plaintiff establishes that the plaintiff presented sufficient competent evidence on causation to create a jury issue. In particular, Dr. Stoner testified that in the absence of the defendant's negligence, Milton likely would not have had the cardiac episode which caused his death or would have survived that episode. While Dr. Stoner was unwilling to opine as to how long Milton would have lived absent the defendant's negligence, and that it was possible he had exceeded his life expectancy, it was for the jury to determine, based upon all the evidence, how long the decedent would have survived in the absence of the defendant's negligence. Sufficient evidence of causation was presented to preclude a JNOV.
Accordingly, we reverse the JNOV and remand for entry of final judgment in accordance with the jury verdict.
REVERSED and REMANDED.
MONACO, J., and KENNEDY, P., Associate Judge, concur.
NOTES
[1] Gross Builders holds that parents' damages for the wrongful death of their minor child should not be measured based on the remaining minority of the child but should be calculated based on the life expectancies of the parents, recognizing that the parents' pain and suffering could be life-long.
[2] The current wrongful death act was enacted in 1972 and repealed pre-existing wrongful death statutes. See § 768.16, Fla. Stat. Note that in Gross Builders, the second district applied decisional law under the old wrongful death statutes to an analysis of the modern wrongful death act because of a lack of significant variation between the two.
[3] See City of Tampa v. Johnson, 114 So.2d 807 (Fla. 2d DCA 1959) (in personal injury action, mortality tables are admissible but only constitute one of many factors which may be considered in estimating life expectancy).